# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————

No. 98-50443

———————

DEXTER HOOVER,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

October 29, 1999

Before GARWOOD, SMITH, and
BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Dexter Hoover appeals the denial of his petition for writ of habeas corpus, challenging the jury instructions given in his trial for conspiracy in state court, claiming that by omission the instructions denied him the assurance of a unanimous jury verdict as guaranteed by the Texas Constitution. Because we find no error cognizable within the limited scope of review permitted to us, we affirm.

I.

Hoover was charged with engaging in organized criminal activity. The indictment charged that he had combined with others to commit, and had committed, the offense of burglary of a building. The indictment included a list of acts allegedly committed by Hoover, any one of which, the state contended, would serve to fulfill the overt act element of the conspiracy charge.

Hoover requested an instruction requiring the jury, by special ballot, to indicate which overt act or acts it unanimously agreed had satisfied the overt-act requirement of the conspiracy charge. The trial court denied the motion and, instead, recited the list of available overt acts and explained that, to find Hoover guilty, the jury would need also to find that he and at least one of the alleged co-conspirators had committed "one or more" of the enumerated acts, though "not necessarily that two persons performed the same overt act together." The court instructed that to find

Hoover guilty, it needed to reach a unanimous verdict.

The jury arguments of both sides helped to clarify this charge with regard to the question whether the unanimity needed to extend to the jury's selection of *particular* overt acts. In the defense's opening statement, counsel explained that

I anticipate that the judge will instruct you . . . [that] no person may be convicted of an offense unless each elementSSeach element, not justSSyou know, weSSsix of us agree that overt act number five occurred, and four of us agree that overt act number fifteen occurred, and eleven of us agree that overt act number twenty-two occurred. No, but each elementSSI mean, it doesn't have to be all twenty-two, but all twelve have to agree on at least one.

Meanwhile, in his closing, the prosecutor told the jury that

[n]ow, as you vote on these overt acts, I would suggest to you that whoever the chairman of the jury may be, that you take them up individually and say, "How many of you believe that Overt Act No. 1 has been proved beyond a reasonable doubt?" . . . You know if it's unanimous by twelve, or it's ten to two, or nine to three, whatever, put it out to the side. And take each one of them like that, and go through all of them. But all it takes to convict is one of these overt acts as it relates to this Defendant doing something in furtherance of this conspiracy and an overt act relating to at least two other defendants. So if you find and believe that all four of these people came up here to Junction on January the 14th and 15th and committed this burglary, and as to those two overt acts, if you find . . . yes, that's what happened, we all agree that that overt act is true and correct beyond a reasonable doubt, it doesn't make any different about the other overt acts. Your unanimous verdict only has

to be as to the overt act that involves this Defendant, and an overt act as it relates with these two other defendants.

The intermediate state appellate court affirmed in an unpublished opinion on the ground that, under Texas law, a general verdict satisfies the unanimity requirement under these circumstances if the defense has not objected to the sufficiency of the evidence supporting any of the alleged overt acts. The Texas Court of Criminal Appeals refused Hoover's petition for discretionary review. Hoover then filed an application for habeas relief in state court, which was denied without written order.

Hoover filed the instant federal habeas petition, raising, among others, a claim that the jury instructions were improper because they did not guarantee juror unanimity. After Hoover was denied relief in the district court, this court issued a certificate of appealability solely on the jury-instruction question, and that is thus the only issue before us.

II.

The district court's denial of Hoover's habeas petition is, as to questions of law, subject to *de novo* review. *See Dyer v. Johnson*, 105 F.3d 607, 609 (5th Cir. 1996). The scope of our review of the underlying state-court prosecution, however, is established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997) (applying AEDPA to habeas cases filed after its effective dates of April 24, 1996). That statute sets a standard of review under which federal habeas relief is denied

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d) (1998). In applying this

standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts.

III.

In this case, the state courts decided that the state constitution's unanimous verdict guarantee is satisfied when the jury instructions include a list of acts any one of which might qualify as the overt act required by the definition of the crime charged; the defense does not object that any of these acts is supported by insufficient evidence; the court admonishes the jury that its verdict must be unanimous; and the opening statement of the defense and the closing statement of the prosecution clarify that the jury must be unanimous with regard to which overt act(s) were committed to satisfy the relevant criminal element; but the defense is denied a request to have submitted to the jury a special verdict form that would have required the jury to specify *which* overt act(s) it found to have satisfied the element. This decision is consistent with Texas practice, which supports considering the jury instructions and the arguments of counsel together to determine the jury's understanding of its duties, and whether that understanding was sufficient to negate possible error in the jury instruction or rendered such error harmless.[1]

Texas practice also comports with listing the enumerated overt acts to the jury and allowing it to select those acts (if any) that it finds to have been committed and therefore to satisfy the overt act requirement of the conspiracy charge. "Each count of a charging instrument may contain as many separate paragraphs charging that offense as necessary, as long as no more than one offense is charged in any count . . . . An indictment may allege different methods of committing the same offense, and each of these methods may be submitted alternatively in the charge to the jury." *Renfro v. State*, 827 S.W.2d 532, 635-36 (Tex. App.SSHouston [1st Dist.] 1991, pet. ref'd) (internal citations and quotations omitted). Finally, Texas makes a practice of upholding jury verdicts in conspiracy cases, *even where the trial court fails entirely to instruct the jury that it must agree on the same overt act*, if the defense fails to object that the evidence was insufficient to support any of the alleged overt acts. *See Daniel v. State*, 704 S.W.2d 952 (Tex. App.SSFort Worth 1986, no pet.) (*citing Vasquez v. State*, 665 S.W.2d 484, 486 (Tex. Crim. App. 1984). The trial court here satisfied these requirements.

IV.

The next step, then, is to discover what, if any, "clearly established federal law, as explicated by the Supreme Court," might be offended by this state-court practice. We first note that we cannot find, as petitioner would like, that the state court violated any federal right to a unanimous verdict in state court, because the Supreme Court "has not held that the Constitution imposes a jury unanimity requirement."[2] We therefore look for more subtle ways in which Hoover's trial may have violated rights explicated by the Court.

The possibility arises that the state court violated Hoover's rights by allowing the jury to select amongst the list of available overt acts for the one it thought satisfied the overt act requirement, without agreeing unanimously to the same overt act, and identifying that one. Supreme Court text gives a bit of support to this contention. As the *Richardson* Court noted,

Finally, this Court has indicated that the

---

[1] *See Gowans v. State*, 995 S.W.2d 787 (Tex. App.-Houston [1st Dist.] 1999, no pet.); *Ramos v. State*, 991 S.W.2d 430 (Tex. App.SSHouston [1st Dist.] 1999, pet. ref'd).

[2] *See Richardson v. United States*, 119 S. Ct. 1707, 1712 (1999) (*citing Johnson v. Louisiana*, 406 U.S. 356, 366 (1972) (Powell, J., concurring) (noting that "in criminal cases due process of law is not denied by a state law which dispenses with . . . the necessity of a jury of twelve, or unanimity in the verdict")).

**3**

Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history or tradition. *Schad v. Arizona*, 501 U.S., at 632-633, 111 S. Ct. 2491 (plurality opinion); *id.*, at 651, 111 S. Ct. 2491 (SCALIA, J., concurring) ("We would not permit . . . an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday . . . .").

*Richardson*, 119 S. Ct. at 1711.

Further consideration of *Richardson* reveals, however, that the Court did not therein, and has not elsewhere, explicated a constitutional requirement that state-court juries must agree to a single act that satisfies the overt act element of the relevant crime, and then identify that act in a special ballot. In fact, the Court has not even firmly established such a requirement for federal juries.[3] We

therefore cannot agree with Hoover that the failure of the state court to require the jury to identify the overt act to which it had unanimously agreed violated an independent constitutional right.

The Supreme Court has, however, explicated one narrow constitutional right of relevance to state court practice in this case. While federal law does not establish a unanimous jury requirement for state-court proceedings, the Texas Constitution does provide such a right in felony trials.[4] The Supreme Court has held that, when a state guarantees a structural protection, it violates the Due Process Clause of the federal Constitution if it fails meaningfully to vindicate

---

[3] In *Richardson*, the Court held that "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element . . . . [A] federal jury [, however,] need not always decide unanimously which of several possible . . . means the defendant used to commit an element of the crime." *Richardson*, 119 S. Ct. at 1710. The Court there considered a challenge to a continuing criminal enterprises ("CCE") conviction. It held that the jury in CCE cases must agree unanimously *which three* acts had been committed by a defendant accused of having undertaken a CCE, because it understood each of those acts to be an independent element of the crime. *Id.* at 1709.

Had the Court understood the relevant element of the crime to be merely that a "series" of acts had been committed, however, then, said the Court, the acts making up that series would merely have been "means" of committing the element, and jury unanimity as to which means (which criminal acts) had actually been performed would not be necessary, so long as each juror agreed that a "series" had been performed. The Court attempted to illustrate this distinction by explaining that

(continued...)

(...continued)

[w]here . . . an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreementSSa disagreement about meansSSwould not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force."

*Id.*

We note that the Court did *not* require, even when directing that the jury agree unanimously as to the specific act taken, either that this unanimity requirement be made clear from the instructions without reference to the statements of counsel to the jury, or that the court instruct the jury not only unanimously to agree on a specific act, but also to *identify* that act in a specific verdict. Even if Texas were required to vindicate its unanimous-jury guarantee in the same way that the federal courts ensure the Sixth Amendment guarantee, we cannot say that it has failed to do so in these circumstances, under the narrow scope of review permitted us under the AEDPA.

[4] *See* TEX. CONST. ART. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29 (West 1998) (guaranteeing a jury trial in felony criminal cases).

that guarantee.[5] We assume, *arguendo* only, that this principle applies outside the context of *Evitts* and related cases. Accordingly, the only federal question is to determine whether Texas, having guaranteed the right to a unanimous verdict, has so deviated from that guarantee as to have denied federal due process of law.

V.

The state courts' decision that the guarantee of unanimity was satisfied by the practice in this case does not violate due process. There is no suggestion in the Supreme Court's jurisprudence that a state, having established a guarantee of a unanimous jury in felony cases, must vindicate that right in conspiracy trials by requiring that the trial court either (1) give instructions to the jury, explicit in themselves without regard to the arguments of counsel, that it must agree as to which act in a list of overt acts the defendant had committed before it could find him guilty of conspiracy; or (2) require that the jury issue a special verdict signifying which of the overt acts it has found the defendant to have committed. Rather, to the extent that it has expounded law in this field at all, the Court has indicated that states must be allowed to determine for themselves, within reason, what procedures satisfy the rights guaranteed by those states.

> [A]t least in defining the elements of the right of jury trial, there is no sound basis for interpreting the Fourteenth Amendment to require blind adherence by the States to all details of the federal Sixth Amendment standards. . . . [I]t strains credulity to believe that [the Civil War Amendments] were intended to deprive the States of all freedom to experiment with variations in jury trial procedure. In an age in which empirical study is increasingly relied upon as a

foundation for decisionmaking, one of the more obvious merits of our federal system is the opportunity it affords each State, if its people so choose, to become a 'laboratory' and to experiment with a range of trial and procedural alternatives.

*Johnson v. Louisiana*, 406 U.S. 356, 376 (Powell, J., concurring).

We certainly cannot therefore say that the Supreme Court requires that Texas, in vindicating *its* right to a unanimous verdict in felony cases, follow exactly the procedures established by federal courts in vindicating the right to a unanimous verdict in federal criminal cases. Instead, we can require of Texas merely that it not "withdraw [the right] without consideration of applicable due process norms."[6] *Evitts*, 469 U.S. at 400-01. There is no reason, under these facts, to think that, under "established Federal law, as determined by the Supreme Court of the

---

[5] *See* U.S. CONST. AMEND. XIV; *Evitts v. Lucey*, 469 U.S. 387, 400-01 (1985) (holding that because Kentucky allowed criminal appeals, it was required to administer them in a manner consistent with federal Due Process Clause).

[6] In defining these "applicable due process norms," the Court has instructed that

> [o]nce it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (internal citations and quotations omitted); *see also Goldberg v. Kelly*, 397 U.S. 254, 262 (1970).

United States," Texas has withdrawn any right at all or has failed to vindicate its unanimous-jury guarantee in any respect.

AFFIRMED.