IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0504-04






THANH CUONG NGO, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE ELEVENTH COURT OF APPEALS


HARRIS COUNTY





 Cochran, J., delivered the opinion of the Court in which Meyers,
Price, Womack, Johnson and Holcomb, J.J., joined. Womack, J., filed a
concurring opinion in which Meyers, J., joined. Hervey, J., filed a dissenting
opinion in which Keasler, J., joined. Keller, P.J., dissented without opinion.


O P I N I O N 


 

 Appellant was charged with credit card abuse under section 32.31 of the Texas Penal
Code. The indictment contained three paragraphs, alleging three separate criminal acts-
stealing a credit card, receiving a stolen credit card, and fraudulently presenting a credit card 
to pay for goods or services. The three application paragraphs in the jury charge permitted
the jury to convict appellant if some of the jurors found that he stole the credit card, others
believed he received a stolen credit card, and still others thought that he fraudulently
presented it. The Eastland Court of Appeals held that this jury charge "did not require that
the jurors unanimously agree upon any one of the three alternate theories," and thus, it
violated both the Texas Constitution and state statutes which require a unanimous jury
verdict. (1) The court of appeals further found that, although appellant affirmatively stated that
he had "no objection" to the jury charge, this error was reversible under Almanza (2) because
appellant suffered "egregious harm." (3) We granted the State's petition for discretionary
review to determine the correctness of that decision. (4)
 Because we agree with the court of
appeals' reasoning and result, we affirm its judgment.


I.

 The evidence at trial showed that, on December 13, 2002, appellant went to a karaoke
bar in Houston around 11 p.m. and ordered a couple of beers. He gave Hanh Nguyen, the
Vietnamese manager of the bar, a credit card. The name on the credit card was Hong
Truong. Mr. Nguyen was immediately suspicious because "Hong" is a woman's name, and,
serendipitously enough, "Hong Truong" is the name of Mr. Nguyen's ex-wife. Mr. Nguyen
immediately called his ex-wife and asked her to come down to the bar. Meanwhile, appellant
pulled out a large stack of credit cards, as well as an HMO and dental plan card, all in the
name of Hong Truong, and asked: "Which one of these can I use?" Mr. Nguyen declined
to take any of them, and appellant sat quietly finishing his beer.

 Mr. Nguyen told his security guard to call the police. They arrived at about the same
time as Hong Truong. She told her ex-husband and the policeman that all of her credit cards
had been stolen when her apartment was burglarized a few weeks earlier. She had come
home from visiting her sick grandfather in the hospital on Thanksgiving Day and found that
the lock on her window had been broken and her apartment ransacked. All of her credit
cards had been in a purse in her bedroom closet. As far as she knew, none of the cards had
been used after the burglary because she had called and canceled them. Ms. Truong
identified the credit card that appellant had given to Mr. Nguyen as one of her credit cards
that had been stolen during the burglary.

 Ms. Truong had seen appellant around her apartment complex several times. He had
knocked on her door before, but she did not open the door for him because she had a small
child. Appellant had also asked her for money. He made her nervous.

 Appellant testified that he had come to America from Vietnam and had lived here for
eleven years, but he did not speak much English. He worked on a shrimp boat. He said that
his friend Mike gave him the credit cards while they were playing pool. Mike wanted
appellant to give the credit cards to Mr. Nguyen, so appellant waited at the bar until Mr.
Nguyen came in. Meanwhile, he bought a beer and paid for it with cash. He insisted that
he did not try to use a credit card to pay for the beer. "I don't know about credit card because
I'm from Vietnam. I never use credit card. I know nothing about credit card." He denied
burglarizing Ms. Truong's apartment or stealing any of her credit cards. He did admit to
having a prior burglary conviction.

 The application paragraphs of the jury charge instructed the jury to find appellant
guilty if it concluded that he committed credit card abuse by any one of three separate acts. (5) 
Appellant's counsel stated that he had no objection to the jury charge.

 The prosecutor told the jury during his closing argument that the jury charge did not
require that the jurors unanimously agree upon any one of the three alternate theories:

 You know what? I have all the ways that we can prove it. You know,
he even testified that, you know, he received the card from someone else.

 I don't know how, you know- I don't know if I proved all three or one
or two or all- I have no idea. You know, what I do know is that for sure the
credit card, he had no right to use it. That's clear. And that he tried to present
it and it was presented to Mr. Nguyen. And he was trying to get something for
it. That's clear. That's how simple this is. (emphasis added).


The jury returned a general guilty verdict and sentenced appellant to two years in a state jail
facility, plus a $3500 fine.

 In his sole point of error on appeal, appellant argued that his constitutional and
statutory right to a unanimous jury verdict was violated "by the disjunctive submission in the
jury charge of two or more separate offenses." (6) First, the court of appeals, presciently
anticipating this Court's decision in Bluitt v. State, (7) concluded that it could address the merits
of appellant's complaint even though he had affirmatively said he had no objection to the
jury charge. (8) Second, the court of appeals held that the trial court erred in submitting the
three separate offenses set out in application paragraphs of the jury charge in the disjunctive
because such a charge would allow for a non-unanimous jury verdict. (9) Third, it concluded
that this error was "egregious" under Almanza "because it deprived appellant of his right to
a unanimous jury verdict and, thus, denied appellant a fair and impartial trial." (10) The court
of appeals reversed the judgment of the trial court and remanded the case for a new trial.

II.


 In its petition for discretionary review, the State contends that the court of appeals
erred in finding that appellant was denied his right to a unanimous verdict. First, it argues
that the application paragraphs merely set out alternate means of committing a single offense
of credit card abuse, but those paragraphs did not allege separate credit card abuse offenses. 
Second, the State argues alternatively that the application paragraphs "merely showed
repeated instances of commission of the offense of credit card abuse." Because appellant
failed to request the State to elect which single offense it would rely upon for conviction, it
was permissible to submit the three separate offenses in the disjunctive. Each juror could
then decide which of the three criminal acts it thought the State had proven and return a
general verdict so long as all of the jurors unanimously agreed that he had committed the
general offense of credit card abuse. In sum, according to the State, there was no error, much
less egregious harm.

 Our first duty in analyzing a jury-charge issue is to decide whether error exists. (11)
Then, if we find error, we analyze that error for harm. (12) Preservation of charge error does
not become an issue until we assess harm. (13) The degree of harm necessary for reversal
depends on whether the appellant preserved the error by objection. (14) Under Almanza, jury
charge error requires reversal when the defendant has properly objected to the charge and we
find "some harm" to his rights. (15) When the defendant fails to object or states that he has no
objection to the charge, we will not reverse for jury-charge error unless the record shows
"egregious harm" to the defendant. (16) Thus, we review alleged charge error by considering
two questions: (1) whether error existed in the charge; and (2) whether sufficient harm
resulted from the error to compel reversal. (17) We turn first to the question of error.

A. Error existed in this jury charge because it allowed for a non-unanimous jury
verdict.


 The indictment charging appellant with credit card abuse under section 32.31 of the
Penal Code alleged three statutorily different criminal acts:


 stealing a credit card owned by Hong Truong; (18)


 


 receiving a credit card owned by Hong Truong, knowing that it had been
stolen, and acting with the intent to use it; (19)

 presenting a credit card with the intent to obtain a benefit fraudulently,
knowing the use was without the effective consent of the cardholder, Hong
Truong. (20)



 The State charged all three offenses in three separate paragraphs within a single count
of one indictment. It sought one conviction for the commission of one credit card abuse
offense by proving any of three different criminal acts, occurring at three different times, and
in three different ways. 

 When the State charges different criminal acts, regardless of whether those acts
constitute violations of the same or different statutory provisions, the jury must be instructed
that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any
one of these criminal acts. (21) In this case, for example, all twelve members of the jury must
unanimously agree that appellant did at least one of three different acts: either he stole Ms.
Truong's credit card; or he received her credit card, knowing that it was stolen and intending
to use it fraudulently; or he fraudulently presented her credit card with the intent to obtain
a benefit. (22) In this case, however, the word "unanimously" appeared only in the "boilerplate" 
section of the jury charge dealing with selection of the jury foreman:

 After you retire to the jury room, you should select one of your members as
your Foreman. It is his or her duty to preside at your deliberations, vote with
you, and when you have unanimously agreed upon a verdict, to certify to your
verdict by using the appropriate form attached hereto and signing the same as
Foreman.


Here the jury could well have believed that they need only be unanimous about their
"verdict" of guilty or not guilty of the general offense of credit card abuse. Indeed, this
unanimity instruction is worse than saying nothing because it affirmatively supports the
prosecutor's erroneous jury argument that the jurors need agree only on their ultimate general
"verdict" of guilty, rather than specifying that they need to unanimously agree on any one of
the three specific criminal acts set out in the jury charge. 

 Under our state constitution, jury unanimity is required in felony cases, and, under our
state statutes, unanimity is required in all criminal cases. (23) Unanimity in this context means
that each and every juror agrees that the defendant committed the same, single, specific
criminal act. Stealing a credit card on Monday is not the same specific criminal offense as
receiving a stolen credit card on Tuesday or presenting a stolen credit card to a bartender on
Wednesday. Indeed, stealing a credit card at 9:00 a.m. on Monday is not the same specific
criminal offense as receiving a stolen credit card at 9:00 a.m. on Monday. These are all
credit card abuse offenses, to be sure, but they are not the same, specific credit card abuse
criminal acts committed at the same time or with the same mens rea and the same actus reus.

 The State is mistaken in its first argument that the trial court simply submitted a single
"credit card abuse" offense with three different statutory manners and means. The phrase
"manner or means" describes how the defendant committed the specific statutory criminal
act. It does not mean that the State can rely upon a laundry list of different criminal acts and
let the individual jurors take their pick on which each believes the defendant committed. (24) 
The State relies upon Schad v. Arizona, (25) but that case does not support its argument, rather
it holds that a jury must be unanimous on what specific criminal act the defendant committed. 
In Schad, the Supreme Court noted that the actus reus was "murder." All twelve jurors had
to agree that the defendant committed that act. They did not need to be unanimous on the
issue of whether the defendant murdered "with premeditation or in the course of committing
a robbery." (26) The preliminary factual questions of premeditation or robbery go to "how" he
committed the murder, not whether he committed the act of murder. As the Supreme Court
explained:

 We have never suggested that in returning general verdicts in such cases the
jurors should be required to agree upon a single means of commission, any
more than the indictments were required to specify one alone. In these cases,
as in litigation generally, "different jurors may be persuaded by different
pieces of evidence, even when they agree upon the bottom line. Plainly there
is no general requirement that the jury reach agreement on the preliminary
factual issues which underlie the verdict." (27)


 Furthermore, the plurality opinion in Schad has been undercut by the reasoning and
result in the Supreme Court's later decision in Richardson v. United States. (28) In this more
recent case, the Court held that, under the "continuing criminal enterprise" statute, the jury
must "agree unanimously about which specific violations make up the 'continuing series of
violations.'" (29) In Richardson, as in the present case, it is not enough that the jurors might be
convinced beyond a reasonable doubt that the defendant committed "a series of violations
in concert with others," it must be unanimous about each specific violation (i.e., which
specific criminal act- which specific drug sale) that it found the defendant had committed. (30) 
The Supreme Court explained that a federal criminal jury must unanimously agree on each
"element" of the crime in order to convict, but need not agree on all the "underlying brute
facts [that] make up a particular element." (31) The crucial distinction is thus between a fact that
is a specific actus reus element of the crime and one that is "but the means" to the
commission of a specific actus reus element. (32) Richardson is precisely analogous to the
present case.

 The State is also mistaken in its second argument that, because the evidence shows
the commission of two or more acts violating the same statutory offense, the defendant was
required to request an election if he wanted the jury to reach a unanimous verdict on one
single act. There are three variations on this theme, but none of them permits a non-unanimous verdict. First, the State could put on evidence of repetition of the same criminal
act, but with different results. (33) Second, the State could put on evidence of repetition of the
same criminal act on different occasions. (34) Third, the State could put on evidence , as it did
in this case, of different criminal acts, each one of which is a violation of a specific penal
statute such as credit card abuse. Under any of these three scenarios, the defendant could
require the State to elect which specific act it was relying upon for conviction, but he need
not. Nonetheless, the jury must reach a unanimous verdict on which single, specific criminal
act the defendant committed.

 The present case bears great similarity to the scenario in Francis v. State, (35) in which
the defendant was charged with one count of indecency with a child in a single paragraph
indictment. (36) The State presented evidence of four separate acts of indecency, each act
occurring at a different time and date. After the defendant requested the State to elect which
specific act it sought to obtain a conviction, the State chose two of them-one involving
touching the victim's breasts and one touching her genitals. (37) Those are separate criminal
acts. These two separate acts were charged in the disjunctive in a single application
paragraph, (38) such that the jury could have returned a non-unanimous verdict, with some of
the jurors finding that the defendant touched the child's breast while others concluding that
he touched her genitals. In Francis, we held that a jury charge which allows for a non-unanimous verdict concerning what specific criminal act the defendant committed is error. (39) 

 In its Brief, the State attempts to distinguish Francis by arguing that appellant did not
request an election, while the defendant in Francis did request an election. The State posits
that jury unanimity is required only if the defendant requests an election between separate
offenses. A request for an election, however, is not a prerequisite for implementing Texas'
constitutional and statutory requirement of jury unanimity. An election simply limits the
number of specific offenses that the jury may consider during its deliberations. Appellant's
failure to request an election means that the jury may be instructed on several different
criminal acts in the disjunctive, but it will still be instructed that it must unanimously agree
on one specific criminal act. (40) As the State correctly points out, one of the purposes of
requiring an election is "to ensure unanimous verdicts, that is, all of the jurors agreeing that
one specific incident, which constituted the offense charged in the indictment, occurred[.]" (41) 
But the converse is not true. The failure to request an election does not eliminate a
defendant's right to a unanimous verdict. (42)

 There is one point upon which we disagree with the Eastland Court of Appeals. The
error here is not in submitting the three separate offenses "in the disjunctive." (43) The error
is in failing to instruct the jury that it must be unanimous in deciding which one (or more)
of the three disjunctively submitted offenses it found appellant committed. Indeed, the
application paragraphs submitted to the jury in this case would have been clearly correct had
each paragraph included just one additional word: "unanimously," such that all twelve jurors
would immediately realize that they had to agree on one specific paragraph which set out one
specific criminal act. (44) The general verdict form of "guilty" or "not guilty" is also proper
because it does not matter which criminal act of credit card abuse the jury found appellant
had committed as long as each juror agreed on the same criminal act. In this case, however,
the jury was never informed, in any way, by anyone, at any time, that-as a collective body- 
it was required to reach a unanimous verdict concerning one specific criminal act. The way
that these three application paragraphs were set out, the jury could well have been misled into
believing that only its ultimate verdict of "guilty" need be unanimous. Under these particular
circumstances, we conclude that, taken as a whole, the jury charge contained error.

 Having found error in the jury charge, we now turn to the question of whether
appellant suffered "egregious harm" because he failed to object to the jury charge.

B. Appellant suffered "egregious harm" when the jury was repeatedly told that it
need not return a unanimous verdict.


 Under the Almanza standard, the record must show that a defendant has suffered
actual, rather than merely theoretical, harm from jury instruction error. (45) Errors that result
in egregious harm are those that affect "the very basis of the case," "deprive the defendant
of a valuable right," or "vitally affect a defensive theory." (46) Appellant argues that he suffered
actual harm from the faulty jury instruction and that he was, in fact, deprived of his valuable
right to a unanimous jury verdict.

 The court of appeals found egregious error under Almanza because: 1) the jury charge
permitted a non-unanimous verdict; 2) during its closing argument, the State forthrightly told
the jury that it need not be unanimous in its verdict (as quoted in Part I supra); and 3) "there
were contested issues at trial." (47) In fact, there was more. (48)

 Near the beginning of the State's voir dire, the prosecutor told the jurors:

 So, I'm going to explain the three ways that we've alleged that I'm going to
intend to prove in this case: That the defendant, Mr. Ngo, on or about
December 13th, in Harris County, Texas, intentionally and knowingly stole a
credit card with intent to deprive without the consent of Hong Truong. That's
one way we can do it.

 Second way, that the defendant, on or about December 13, in Harris
County, Texas, received with intent to deprive without the consent of Hong
Truong. That's one way we can do it.

 And the third way, defendant, on or about December 13th, in Harris
County, Texas, with intent to obtain a fraudulent benefit used or presented a
credit card to Mr. Hanh Nguyen without the consent of Ms. Hong Truong. 
Does that make sense to everybody? There's several different ways this can
happen. Who in the first row does that not make sense to?

 The important thing with this is that if three of you who end up sitting
on the jury panel feel like he stole the credit card and used it, six of you think
that he received it and three of you think he presented it, it doesn't matter
which one you think he did. It can be a mix and match, whichever one you
believe.

 Everyone in the first row agree that that's okay? Because that's the
law. (emphasis added).


But that is not the law; that is the error in this case. Then, during the defense voir dire, while
the defense was trying to explain (erroneously) that the State must prove all three criminal
acts, the prosecutor objected, and the trial judge told the jurors:

 There's three ways alleged that the offense can be committed. The State must
prove, to your satisfaction, one of the number of them; however, in the course
of the proof, the State may prove one to the satisfaction of part of the jury,
another one to the satisfaction of others, the third one to the satisfaction of
another part of the jury, but if you found the defendant guilty, you must
believe the State has proved one of the three paragraphs in its entirety.


Thus, both the trial judge and the prosecution misstated the law at the very beginning of the
case and at the very end. (49) This is not an instance of a jury charge which is simply missing
an important word-"unanimously"- which reasonable jurors might infer from the context of
the entire charge or from the comments of the advocates emphasizing the correct legal
principles. (50) Here, the jury was affirmatively told, on three occasions, twice by the
prosecutor and once by the trial judge, that it need not return a unanimous verdict. Both told
the jury that "a mix and match" verdict of guilt based upon some jurors believing appellant
stole a credit card, others believing he received a stolen credit card, and still others believing
that he fraudulently presented one, was "the law." (51) 

 Furthermore, the evidence was contested as appellant testified and denied committing
any one of the three offenses. And, under no theory of the evidence in this case, could
appellant have committed both the original theft by burglarizing Ms. Truong's apartment and
have received the stolen credit cards from someone else who had committed the burglary. 
These two offenses are mutually exclusive in this particular context. If even a single juror
believed that appellant was not the original thief, but did believe that he had received the
stolen credit card from "Mike," this could not have been a unanimous verdict.

 In sum, this is an instance in which the original jury charge error was not corrected
or ameliorated in another portion of the charge; instead, it was compounded by the one
misleading statement concerning unanimity that was set out in the jury charge, as well as by
the affirmative statements of both the trial judge and prosecutor that the jury could indeed
return a non-unanimous verdict. And, given the state of the evidence, we-like the court of
appeals-cannot determine that the jury was, in fact, unanimous in finding appellant guilty of
one specific credit-card-abuse offense. Some jurors could have found appellant's defense
to one or more of the three allegations persuasive while finding another one unpersuasive. 
We therefore agree that appellant's constitutional and statutory right to a unanimous jury
verdict was violated and this violation caused egregious harm to his right to a fair and
impartial trial. (52) We affirm the judgment of the court of appeals.


Cochran, J.

Delivered: March 16, 2005

Publish 
1. Ngo v. State, 129 S.W.3d 198, 200 (Tex. App. - Eastland 2004).
2. Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985).
3. Ngo, 129 S.W.3d at 202.
4. We granted both of the State's grounds for review:


 The court below erroneously held that appellant's trial counsel's affirmative statement
that there was no objection to the court's charge did not forfeit or waive appellant's right
to fundamental error review of the court's charge under Almanza v. State, 686 S.W.2d
157 (Tex. Crim. App. 1985).


2) The court below erroneously determined contrary to and in conflict with prior decisions
of this Court and the Supreme Court of the United States that appellant was denied his
right to a unanimous verdict when the trial court disjunctively submitted the State's
theories of conviction alleged in the indictment to the jury in its charge at the guilt-innocence stage of the trial with a general verdict form, where each of the alleged theories
of conviction were not separate offenses, as found by said appellate court, but merely
alternative means of committing the offense of credit card abuse as defined by Section
32.31(b) of the Penal Code.

In its Brief on the Merits, the State abandoned its first ground for review as that very issue had, in
the meantime, been resolved adversely to the State in Bluitt v. State, 137 S.W.3d 51 (Tex. Crim.
App. 2004). We therefore dismiss the State's first ground for review and address only the second
issue.

5. The application paragraphs read:

 Now, if you find from the evidence beyond a reasonable doubt that
[appellant] on or about the 13th day of December, 2002, did then and there
unlawfully, intentionally or knowingly steal a credit card owned by the card
holder, Hong Truong, with intent to deprive the cardholder of the property and
without the effective consent of the cardholder; or 

 If you find from the evidence beyond a reasonable doubt that [appellant]
on or about the 13th day of December, 2002, did then and there unlawfully and
knowingly receive with intent to use a credit card owned by card holder, Hong
Truong, knowing the credit card had been stolen; or 

 If you find from the evidence beyond a reasonable doubt that [appellant]
on or about the 13th day of December, 2002, with intent to obtain a benefit
fraudulently, did use or present to [H]anh Nguyen a credit card knowing the use
was without the effective consent of the cardholder, Hong Truong, namely
without consent of any kind, and knowing that the credit card had not been issued
to the defendant, then you will find [appellant] guilty as charged in the
indictment. 

(Emphasis added).
6. 129 S.W.3d at 199.
7. 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) ("[w]e hold that an affirmative denial of
objection, as in this case, shall be deemed equivalent to a failure to object. An appellant may
raise such unobjected-to charge error on appeal, but may not obtain a reversal for such error
unless it resulted in egregious harm").
8. Ngo, 129 S.W.3d at 199 ("we fail to see any meaningful distinction, in the context of
Almanza, between a failure to object and an affirmative approval of the jury charge").
9. Id. at 201.
10. Id. at 202.
11. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (citing Hutch v. State,
922 S.W.2d 166, 170-71 (Tex. Crim. App. 1996)).
12. Middleton, 125 S.W.3d at 453.
13. Id.
14. Id. (citing Hutch
, 922 S.W.2d at 171). 
15. Almanza, 686 S.W.2d at 171; see also Hutch, 922 S.W.2d at 171.
16. Bluitt, 137 S.W.3d at 53; Almanza, 686 S.W.2d at 171.
17. See Posey v. State, 966 S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998).
18. Tex. Penal Code § 32.31(b)(4).
19. Id. 
20. Tex. Penal Code § 32.31(b)(1)(A).
21. Francis v. State, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) ("[t]he unanimity
requirement is undercut when a jury risks convicting the defendant of different acts, instead of
agreeing on the same act for a conviction") (citing United States v. Holley, 942 F.2d 916, 925 (5th
Cir. 1991)).
22. Based upon the record evidence, it is entirely possible that the jury could have found
that appellant committed two of these criminal acts: he either burglarized Ms. Truong's
apartment and stole her credit cards himself or he obtained them from the original burglar,
knowing that the cards belonged to someone else, and he also tried to use Ms. Truong's credit
cards to pay for his beer. The State could have charged appellant with both of these credit card
abuse offenses and obtained two convictions had it charged appellant in separate counts instead
of separate paragraphs. See Tex. Code Crim. Proc. art. 21.24(b) ("[a] count may contain as
many separate paragraphs charging the same offense as necessary, but no paragraph may charge
more than one offense"); see also Francis v. State, 36 S.W.3d at 126 (Womack, J., concurring)
(stating that "[o]ur law allows only one offense to be charged in each paragraph of an indictment,
information, or complaint. Here, the State, having chosen to plead only one paragraph, was
required to elect one incident on which to rely. This requirement is not only essential to giving a
defendant the requisite notice of the charge against which to defend, it helps assure that the jury's
verdict will be unanimous") (footnote omitted).

 In this case, the State affirmatively decided to seek only one conviction. It was certainly
entitled to do so. But it can charge only one specific criminal offense in one paragraph; it cannot
charge different violations of the same generic offense by the commission of different criminal
acts in a single paragraph and then seek a non-unanimous general "credit card abuse" guilty
verdict. See Schad v. Arizona, 501 U.S. 624, 633 (1991) ("nothing in our history suggests that
the Due Process Clause would permit a State to convict anyone under a charge of 'Crime' so
generic that any combination of jury findings of embezzlement, reckless driving, murder,
burglary, tax evasion, or littering, for example, would suffice for conviction"); id. at 651 ("[w]e
would not permit ... an indictment charging that the defendant assaulted either X on Tuesday or
Y on Wednesday, despite the 'moral equivalence' of those two acts")(Scalia, J., concurring). 
23. See Francis, 36 S.W.3d at 126 (Womack, J., concurring) (citing Tex. Const. art. V, §
13; Tex. Code Crim. Proc. arts. 36.29(a), 37.02, 37.03, 45.034-45.036). The unanimity
requirement is a complement to and helps in effectuating the "beyond a reasonable doubt"
standard of proof. See United States v. Gipson, 553 F.2d 453, 457 n.7 (5th Cir. 1977).
24. A handy, though not definitive, rule of thumb is to look to the statutory verb defining
the criminal act. That verb-such as steal, receive, or present-in section 32.31 of the Penal Code,
is generally the criminal act upon which all jurors must unanimously agree. See United States v.
Gipson, in which Judge Wisdom stated:

 The unanimity rule ... requires jurors to be in substantial agreement as to just what
a defendant did as a step preliminary to determining whether the defendant is
guilty of the crime charged. Requiring the vote of twelve jurors to convict a
defendant does little to insure that his right to a unanimous verdict is protected
unless this prerequisite of jury consensus as to the defendant's course of action is
also required.

553 F.2d at 457-58 (concluding that a federal statute criminalizing the "bartering, selling, or
disposing" of a stolen vehicle in interstate commerce or "receiving, concealing, or storing" it,
required jury unanimity as to which type of criminal act defendant committed-"selling" or
"receiving"). Although the Supreme Court criticized Gipson's notion of "distinct conceptual
groupings" in Schad as being "too conclusory to serve as a real test" for deciding what facts a
jury need unanimously agree upon, the Schad plurality did not disagree with the underlying
proposition that all jurors must agree upon the specific statutory criminal act that the defendant
was alleged to have committed. 501 U.S. at 634-35.

 In any case, we have already stated, in Francis, that the Texas requirements for a
unanimous jury verdict "are not identical to the requirements under federal law." Francis, 36
S.W.3d at 125 n.1; id. at 127 n.11 (Womack, J., concurring).
25. 501 U.S. 624 (1991) (plurality op.).
26. Id. at 630. 
27. Id. at 631-62; see also Aguirre v. State, 732 S.W.2d 320, 324-27 (Tex. Crim. App.
1987) (op. on reh'g) (general verdict form proper when State alleged alternative means of
committing one murder-intentionally causing victim's death or felony-murder). Similarly,
under Schad and Aguirre, the State could charge Prince Yussupov with the murder of Rasputin,
alleging five different manners and means- by poisoning, garroting, shooting, stabbing, or
drowning Rasputin. The jury could return a general verdict if it found that Prince Yussupov
intentionally caused the death of Rasputin by any of those means; the unanimity requirement
goes to the act of "causing the death of Rasputin," while the jury need not be unanimous on the
preliminary fact issues- whether it was by poisoning, garroting, etc. Id.; see Kitchens v. State,
823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991). 
28. 526 U.S. 813 (1999).
29. Id. at 815.
30. Id. at 816.
31. Id. at 817. As the Court in Richardson explained:

 [w]here ... an element of robbery is force or the threat of force, some jurors might
conclude that the defendant used a knife to create the threat; others might
conclude he used a gun. But that disagreement--a disagreement about means--would not matter as long as all 12 jurors unanimously concluded that the
Government had proved the necessary related element, namely that the defendant
had threatened force.

Id. at 817.
32. Id.; see also United States v. Reeder, 170 F.3d 93, 105 (1st Cir. 1999) ("[w]hile a jury
must agree on all of the elements of an offense, it need not agree on the means by which all the
elements were accomplished").
33. For example, the State might charge a defendant with stealing a credit card from Hong
Truong and put on evidence that he stole a credit card from Hong Truong and Hanh Nguyen. See 
George E. Dix & Robert O. Dawson, Texas Criminal Practice and Procedure § 30.51 at
664 n.1 (2nd ed. 2001) ("If an indictment alleges theft of one hog and the proof shows that by a
single act the defendant stole two hogs, does this show two different units between which the
State is required to elect?") & § 30.58 at 679 (discussing Coward v. State, 24 Tex. App. 590, 7
S.W. 332 (1888), in which "the old Court of Appeals held . . . that when a defendant was tried for
theft of one animal and the evidence showed the thief took two animals, the jury charge had to
make clear which of the animals was the subject of the charged offense") & § 30.57 n.17 at 149
(Supp. 2004) (noting Cates v. State, 72 S.W.3d 681, 695 n.5 (Tex.App.-Tyler 2001) "where the
State's evidence showed multiple sexual acts committed by the accused against two children, the
need for an election was not eliminated by the continuing course of conduct exception").
34. For example, the State could allege that appellant fraudulently presented Hong
Truong's credit card to Hanh Nguyen, and then prove that he did so on Monday, Tuesday, and
again on Wednesday. See Dix & Dawson, § 30.55 at 673 (discussing Crawford v. State, 696
S.W.2d 903 (Tex. Crim. App. 1985), in which "the indictment charged rape of a child consisting
of a single act of intercourse with the named victim. The victim testified to numerous acts of
intercourse over several years. Since each act of intercourse could constitute the charged offense,
the State was required to elect one on which to proceed").
35. 36 S.W.3d 121 (Tex. Crim. App. 2000).
36. Id.
37. Id.
38. The application paragraph in Francis, read, in pertinent part:

 If you find from the evidence beyond a reasonable doubt that on or about the 1st
day of November, 1992, in Tarrant County, Texas, the Defendant, Joseph Clayton
Francis, did ... engage in sexual contact by touching the breast or genitals of ...

36 S.W.3d at 124 (emphasis in original).
39. 36 S.W.3d at 125
40. See Dix & Dawson, § 30.67 at 688-89 (such a charge "would not limit the jury to any
one of several acts or incidents that might constitute the crime. It would, however, make clear
that the jurors must unanimously agree on one of them as constituting the proved offense").
41. Phillips v. State, 130 S.W.3d 343, 349 (Tex. App. - Houston [14th Dist.] 2004, n.p.h.).
42. See Francis, 36 S.W.3d at 127 n.10 (Womack, J., concurring) ("[w]e do not reverse for
the election error. It is necessary to discuss the principles that underlie the requirement of
election because one of those principles was violated by the error in the charge").
43. Ngo, 129 S.W.3d at 201 (stating that "because of the possibility of a non-unanimous
jury verdict, 'separate offenses' may not be submitted to the jury in the disjunctive"). In making
this statement, the court of appeals cited to Francis, but as the State correctly points out, the
defendant in Francis requested that the State elect one single offense to submit to the jury. Here,
appellant did not so request. Therefore, he waived any right to require the State to pick just one
of the three criminal acts to submit. The jury could be charged disjunctively, as long as it was
also informed that it must be unanimous in deciding which criminal act (or acts) appellant
committed- stealing the credit card, receiving a stolen credit card, or fraudulently presenting it.
44. Thus, a clearly correct version of the application paragraphs would have read:

 Now, if you unanimously find from the evidence beyond a reasonable doubt that
[appellant] on or about the 13th day of December, 2002, did then and there
unlawfully, intentionally or knowingly steal a credit card owned by the card
holder, Hong Truong, with intent to deprive the cardholder of the property and
without the effective consent of the cardholder; or 

 If you unanimously find from the evidence beyond a reasonable doubt
that [appellant] on or about the 13th day of December, 2002, did then and there
unlawfully and knowingly receive with intent to use a credit card owned by card
holder, Hong Truong, knowing the credit card had been stolen; or 

 If you unanimously find from the evidence beyond a reasonable doubt
that [appellant] on or about the 13th day of December, 2002, with intent to obtain
a benefit fraudulently, did use or present to [H]anh Nguyen a credit card knowing
the use was without the effective consent of the cardholder, Hong Truong, namely
without consent of any kind, and knowing that the credit card had not been issued
to the defendant, then you will find [appellant] guilty as charged in the indictment. 

(Emphasis added). There is, of course, nothing in the Texas Constitution, statutes, or case law
that requires a jury charge to contain the explicit words "unanimous" or "unanimously." But
Texas law does explicitly require that a jury's verdict be unanimous. The addition of the word
"unanimously" before the description of each distinct criminal act in the application is merely
one way to implement that legal requirement. We certainly do not suggest that it is the only way.
45. Dickey v. State, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999) (citing Arline v. State, 721
S.W.2d 348, 351 (Tex. Crim. App. 1986)). 
46. Hutch v. State, 922 S.W.2d at 171.
47. Ngo, 129 S.W.3d at 201-02.
48. Under Almanza, to determine whether the error was so egregious that a defendant was
denied a fair and impartial trial, a reviewing court should examine: 1) the entire jury charge; 2)
the state of the evidence; 3) the arguments of counsel; and 4) any other relevant information in
the record. 686 S.W.2d at 171. 
49. Defense counsel did not object to these misstatements of the law by either the
prosecutor or trial judge. The record shows that the prosecutor handed the trial judge a copy of a
case from this Court. Apparently all three-the prosecutor, defense attorney, and
judge-innocently, but mistakenly, believed that this Court's opinion that a jury's "mix and
match" nonunanimous verdict on the specific "manner and means" of committing one single
criminal act (e.g., causing a person's death by strangling, shooting, poisoning, or garroting) also
applied to a "mix and match" nonunanimous verdict concerning different criminal acts which
violate the same statutory provision. Thus, all three acted in complete good faith when each
either unintentionally committed error or failed to object to the error. 
50. Compare Hoover v. Johnson, 193 F.3d 366, 367-68 (5th Cir. 1999) (when both state
prosecutor and defense attorney correctly explained Texas law of unanimity to jury, habeas
petitioner's federal constitutional claim that jury instructions did not guarantee jury unanimity
rejected).
51. See, e.g., Castillo v. State, 734 N.E.2d 299, 304-305 (Ind. App. 2000) (trial court's
failure to instruct jury on unanimity requirement when State offered evidence that defendant had
committed same "dealing cocaine" offense twice was reversible error when both trial court and
prosecutor told jury it had "a choice" of convicting defendant for "one or the other ... or both"
instances of drug dealing); Colorado v. Estorga, 200 Colo. 78, 82, 612 P.2d 520, 523 (Colo.
1980) (en banc) (defendant's right to unanimous verdict violated where state offered evidence of
more than one alleged sexual assault on different occasions and trial court instructed the jury it
could find defendant guilty if "the evidence showed that the crime had occurred at any time
within three years prior to the filing of the information"); Horton v. United States, 541 A.2d 604,
610-11 (D.C. Ct. App. 1988) (defendant's right to unanimous jury verdict violated when different
factual scenarios could have supported jury verdict on assault conviction and appellate court
could not "infer from the verdicts themselves that all the jurors were in agreement as to
appellant's specific criminal acts"); Hawaii v. Mahoe, 89 Haw. 284, 291, 972 P.2d 287, 294
(Haw. 1998) (right to unanimous jury verdict violated when defendant made two distinct entries
into residence, prosecution did not elect which entry to rely on for conviction, and jury not given
specific instruction of requirement of unanimity for underlying criminal act); Illinois v. Scott, 243
Ill. App. 3d 167, 612 N.E.2d 7, 9, (Ill. Ct. App. 1993) (right to unanimous verdict violated when
defendant charged with three counts of delivery of a controlled substance and verdict form
included only one count of delivery, allowing jurors to find guilt without agreeing upon which
count he was guilty).

 
52. See Clear v. State, 76 S.W.3d 622, 624 (Tex. App. - Corpus Christi 2002, no pet.)
(finding egregious harm to defendant's right to a unanimous jury verdict when jury charge
allowed conviction upon disjunctive submission of three separate sexual assault of a child
offenses); see generally, Ruiz v. State, 753 S.W.2d 681, 683 (Tex. Crim. App. 1988) (egregious
harm resulted from failure to instruct jury on State's burden to disprove sudden passion when
defendant did not offer evidence of any other defense); Bellamy v. State, 742 S.W.2d 677, 685-86
(Tex. Crim. App. 1987) (plurality op.) (egregious harm resulted from erroneous instruction on
presumption of knowledge that property was stolen when defendant's knowledge was sole
contested issue at trial); see also Horton, 541 A.2d at 611-12 (although defendant did not object
to lack of unanimity instruction in jury charge, failure to give such an instruction was "plain
error, that is, error so clearly prejudicial to substantial rights of the defendant as to jeopardize the
very fairness and integrity of the trial" when jury could have been misled into believing that it
need not be unanimous on which of two different assaults he committed).