Virgil CRAWFORD, Appellant,

v.

The STATE of Texas, Appellee.

No. 665–84.

Court of Criminal Appeals of Texas, En Banc.

Sept. 25, 1985.

Clifford W. Brown, Lubbock, for appellant.

Travis S. Ware and Marta Y. Rosas, Sp. Prosecutors, Lubbock, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Appellant, a 67-year-old attorney, was indicted for rape of a child under V.T.C.A. Penal Code, Section 21.09.[1] Trial was in Lubbock County upon change of venue from Terry County. A jury found appellant guilty, and the punishment was assessed by the jury at eight years confinement, probated, and a fine of $10,000.00. The judgment was reversed by the Seventh Supreme Judicial Court of Appeals (Amarillo) which held, inter alia, that the State was required to elect which act of intercourse it was relying upon for conviction, and that the limiting instructions given to the jury on these extraneous acts were erroneous

since they went to the appellant's credibility. *Crawford v. State*, 685 S.W.2d 343 (Tex.App.—Amarillo 1984). We granted the State's petition for discretionary review to examine these holdings.

The indictment alleged this offense was committed "on or about the 28 day of September, A.D.1979." B____ A____ testified she had worked for appellant since she was nine years old, when appellant asked her to work for him. She worked in appellant's law office, where her duties consisted of emptying ash trays or trash cans, sweeping and dusting. B____ A____ also worked at appellant's investment house, which appellant and several others were restoring. B____ A____ also testified she had worked on three or four occasions at appellant's residence. B____ A____ received $3.00 to $5.00 for two to three hours work.

B____ A____ testified that, at some point when she was twelve years old, appellant started to feel of her body in his office. According to B____ A____, appellant sat B____ A____ on his lap and fondled her breasts and vagina. B____ A____ further testified that, when she was twelve years old, appellant first had sexual intercourse with her on a stool in the rear hall of his office.

B____ A____ testified that, in July of 1977, when she was age thirteen, appellant had sexual intercourse with her at his residence in his bedroom. B____ A____ also stated that appellant and she engaged in sexual intercourse the "three or four times" she worked at appellant's residence. This testimony was admitted over appellant's objection that, unless a specific time was given to these acts, appellant had no opportunity to defend against the accusations.

In January of 1979, B____ A____ missed her period and, as she testified, she knew she was pregnant. No one else ever knew of her pregnancy, until the delivery of the child.

---

1. This statute has now been repealed by the Legislature, see 1983 Tex.Gen.Laws, ch. 977, Section 12, at 5321 (effective as to offenses committed on or after September 1, 1983), and has been replaced by V.T.C.A. Penal Code, Section 22.011(a)(2)(A) (sexual assault of child).

There was testimony that B⎯⎯ A⎯⎯ and appellant had sexual intercourse on the floor in a supply closet in appellant's office in July of 1979. Until this time, no specific dates were mentioned.

B⎯⎯ A⎯⎯ further testified that she and appellant had sexual intercourse at appellant's investment house on September 18, 1979. According to this testimony, B⎯⎯ A⎯⎯ stated that she and appellant would work at the investment house at night, drive to appellant's office, and have sexual intercourse on the floor of the supply closet.

According to B⎯⎯ A⎯⎯'s testimony, this same scenario occurred on September 19, 20, 21, 23, 26, and 27, 1979. B⎯⎯ A⎯⎯ was fifteen years old during this time period.

■ As mentioned above, the indictment alleged this offense was committed "on or about the 28 day of September, A.D.1979." After the State rested, appellant made a motion to require the State to elect to a specific act of intercourse the State wished to prosecute on. The trial court denied the motion, stating:

"... I will not require the State to elect September the 18th or the 17th. I will limit it to the period of September 18th, 1979, through September 29th, 1979, and not any one specific date in that. Since the evidence does show a series there, I will not require them to elect between those."

The State's first contention is as follows: "The trial court did not err in not requiring the State to elect which act of intercourse was being relied upon for conviction because all acts were part of a continuous course of conduct."

We hold, from the facts above, that these acts were not part of one continuous course of conduct. Therefore, the State was required to elect which act of intercourse was being relied upon for conviction.

The State relies heavily on this Court's holding in *McNutt v. State*, 168 Tex.Cr.R. 27, 322 S.W.2d 622 (1959) for the contention that the State was not required to elect as

to an offense that was to be relied upon by the State for conviction. In *McNutt*, a 14-year-old girl testified that she and defendant left in his automobile, remained together for approximately three weeks, where, during this time, they engaged in acts of sexual intercourse. The pertinent issue in that case was whether the trial court erred in allowing the girl to testify about her conversations with defendant regarding their plans to enter into the business of prostitution, his suggesting an act of sodomy to her, an act of intercourse with another man where she had been paid and had subsequently given the money to the defendant, as well as other "prostitution dates" during this time period. This Court held the following:

"The State was not required to elect the act of intercourse upon which it would rely, and no effort was made to require such an election. The facts here adduced show one continuous course of conduct or transaction during which the 14-year old prosecutrix was having frequent acts of sexual intercourse with appellant, and each fact was in such close juxtaposition to such acts and to each other as to render them all admissible. *McCoy v. State*, 144 Tex.Cr.R. 309, 162 S.W.2d 976; *Sims v. State*, 156 Tex.Cr.R. 218, 240 S.W.2d 297; and *Thompson v. State*, Tex.Cr.App., [166 Tex.Cr.R. 18] 310 S.W.2d 108."

The Court of Appeals properly held that *McNutt* deals with the *admissibility* of extraneous offenses as evidence, not the election by the State as to which act of intercourse was being relied upon for conviction. *Crawford v. State*, supra at 347. Furthermore, *McCoy* (robbery by assault), *Sims* (rape), and *Thompson* (rape), supra, cited and relied upon by *McNutt*, above, also involve the admissibility of evidence, and do not concern elections by the State.

Instead, we find that *Bates v. State*, 165 Tex.Cr.R. 140, 305 S.W.2d 366 (1957) applies to this case. In *Bates*, the indictment charged that the offense of rape of a child was committed "on or about" the 20th of June, 1956. Defendant allegedly had num-

erous acts of sexual intercourse with his 13-year-old stepdaughter. The girl testified that the first act occurred in May, 1954. Thereafter, defendant would have sexual intercourse with her once or twice a week until 1956, where defendant would have intercourse with her three or four times a week. In addition, she testified that defendant had intercourse with her on June 20, 1956 and on July 4, 1956.

The trial court in *Bates* refused to require the State to elect upon which act it sought a conviction. This Court reversed and remanded stating:

"... where more than one act of intercourse is shown, upon motion of the accused, the state should be required to elect as to which act it will rely on for a conviction. 35 Tex.Jur. 865, Sec. 73; *Batchelor v. State*, 41 Tex.Cr.R. 501, 55 S.W. 491; *Powell v. State*, 47 Tex.Cr.R. 155, 82 S.W. 516; *Mora v. State*, 74 Tex.Cr.R. 26, 167 S.W. 344; *Crosslin v. State*, 90 Tex.Cr.R. 467, 235 S.W. 905 and *Hudgins v. State*, 125 Tex.Cr.R. 451, 69 S.W.2d 97."

305 S.W.2d at 368. Thus, the State was required to elect, and failure to do so was reversible error.[2]

The State also argues that, in a rape of a child case, since threats or force are presumed, then this presumption would necessarily carry forward throughout the sexual relationship of appellant and B___ A___. Therefore, this relationship would constitute one continuous course of conduct or transaction, and an election would not be necessary.

We disagree. "No election is required ... where the evidence shows that several acts of intercourse were committed by one continuous act of force and threats." *Steele v. State*, 523 S.W.2d 685, 687 (Tex. Cr.App.1975). However, *Steele* went on to say "[a]lthough the acts were separated by the time and distance asserted, the two acts of intercourse were occasioned by [Steele's] *continuing and intervening actions*, and they were part and parcel of the same criminal transaction." Id. (emphasis supplied).[3] In *O'Clair v. State*, 364 S.W.2d 375 (Tex.Cr.App.1963), a child testified that the defendant had been having intercourse with her constantly since she was 9½ years old until the date charged in the indictment some three years later. This Court followed *Bates* and reversed and remanded.[4]

During the trial, B___ A___ testified on cross-examination as follows:

"Q. But Mr. Crawford never, at any time, exerted any force, or coercion, or anything like that, did he?

"A. What do you mean by—

"Q. Well, he didn't force you, he didn't use force on you to require you to have intercourse with him, did he?

"A. No.

"Q. Now, every time it came time for you to go back to work, you went back to work voluntarily, did you not?

"A. Yes, sir."

---

2. In *Schepps v. State*, 432 S.W.2d 926, 929–30 (Tex.Cr.App.1968), a conviction for counterfeiting cigarette tax stamps, this Court held the State did not have to elect as to *which* act of counterfeiting of a particular stamp the State wished to convict on, when there were thousands of stamps involved. In determining that the defendant's reliance on *Bates* was unfounded, this Court stated that the facts of *Bates*, as here, dealt with "separate and distinct acts of intercourse" which "occurred at various times and places."

3. In *Bethune v. State*, 363 S.W.2d 462, 464 (Tex. Cr.App.1962) a woman was raped repeatedly in one night. This Court held that the acts of intercourse occurred in the same bed in the same night, and, in such a case, no election was required. See also *Ledesma v. State*, 147 Tex. Cr.R. 37, 181 S.W.2d 705, 707 (1944) (where several acts of sexual intercourse were accomplished by one continuous act of force and threats in one day, no election is required).

4. We also note that *McDonald v. State*, 513 S.W.2d 44, 52 (Tex.Cr.App.1974), a conviction for sodomy, does not apply to this ground of error. There we held that an extraneous offense which occurred in the summer of 1970 was not too remote and was admissible to show a continuing course of conduct by the defendant until the charged offense approximately one year later. This case did not deal with the election of offenses but, instead, like *McNutt*, supra, involved the admissibility of extraneous offenses.

Therefore it seems clear that there was no "continuing and intervening" action by appellant, and these were separate and distinct acts. The State was required to elect as to which act it wished to convict appellant on.

The State also contends that the limiting instruction on extraneous offenses given by the court was not erroneous. The limiting instruction, given over appellant's timely objection, was as follows:

"You are further charged that if there is any evidence before you in this case tending to show that the defendant herein committed offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe, beyond a reasonable doubt, that the defendant committed such other offenses, if any were committed, and if you find and believe beyond a reasonable doubt from such testimony that other offenses were committed, then such testimony still cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the weight you will give his testimony, and you will not consider the same for any other purpose."

In *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App.1972), this Court presented a nonexclusive list of purposes for allowing in evidence of extraneous offenses (i.e. to show res gestae, identity, scienter, malice or state of mind, motive of the accused, or to refute a defensive theory). See *Perbetsky v. State*, 429 S.W.2d 471, 476 (Tex.Cr. App.1968) (in a conviction for rape, this Court held admissible evidence that the defendant had propositioned two other women on the issue of identity and to discredit

testimony by the defendant that he did not know what he was doing on the night in question). See generally *Morgan v. State*, 692 S.W.2d 877 (Tex.Cr.App., 1985) (re: admissibility of extraneous offenses in an indecency with a child). See also P. McClung, Lawyers Handbook for Texas Criminal Practice 369 (1984).

During the trial, the State relied upon *Garcia v. State*, 573 S.W.2d 12, 16 (Tex.Cr. App.1978) for the introduction of the extraneous offenses. *Garcia*, a conviction for indecency with a child, held that the introduction of similar acts other than those complained of was admissible to illustrate the guilty knowledge of the defendant, his unnatural attention toward the child, as well as the probability of the act. See also *McDonald v. State*, supra.

 Although it was proper to admit this evidence for this purpose, the appellant was entitled to an instruction from the court limiting the jury's consideration of extraneous offenses to those purposes for which they were admitted. *Hitchcock v. State*, 612 S.W.2d 930 (Tex.Cr.App.1981). See also *Bates v. State*, supra, 305 S.W.2d at 368.

 It was improper, however, for the trial court to instruct the jury to consider the extraneous offenses only for the purpose of impeaching the credibility of the appellant. *Sparks v. State*, 366 S.W.2d 591, 592 (Tex.Cr.App.1963).[5] The State in its brief argues that the trial court avoided the reference to the word "credibility", and also avoided directing the jury's consideration of testimony of extraneous offenses, when such evidence aided the jury in passing upon the weight to be given the testimony of the appellant. Therefore, the State argues, *Sparks* does not apply, and the charge was not erroneous.

---

**5.** The charge in *Sparks* read as follows:
"You are instructed that the evidence of (the prosecutrix) as to prior and extraneous acts of the defendant, which occurred before the alleged offense, if any, charged in the indictment, is limited as to consideration by you, if you consider it at all, and you may consider same only for the purpose of affecting the

credibility of the defendant, if it does so affect his credibility.

"You are the exclusive judges of said evidence, the truth or falsity thereof, and whether or not it does affect the credibility. You must not consider same for any other purpose."

We disagree. Regardless of the terminology used, the instruction in this case does not limit the use of the evidence of the extraneous acts to the purpose for which it was admitted: to prove the probability of the charged act and the unnaturalness of appellant's attitude toward his victim of lust. Furthermore, we hold that this instruction incorrectly allowed the jury to consider extraneous acts of the appellant for the purpose of impeaching his credibility.

Thus, for the reasons stated above, the judgment of the Amarillo Court of Appeals is affirmed, and the cause is reversed and remanded to the trial court.