Affirmed and Memorandum Opinion filed November 15, 2008








Affirmed
and Memorandum Opinion filed November 15, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01120-CR

NO. 14-06-01121-CR

____________

 

WILLIE ALVIN
GRIFFIN, SR.,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 400th
Judicial District

Fort Bend County, Texas

Trial Court Cause Nos. 40,154A
& 40,151A

 



 

M E M O R A N D U M   O P I N I O N








A jury
found appellant, Willie Alvin Griffin, Sr., guilty of sexual assault of a child
and aggravated sexual assault of a child.  See Tex. Penal Code Ann. '' 22.011, 22.021
(Vernon 2003).  The jury assessed punishment at fifty years= confinement in
the Texas Department of Criminal Justice, Institutional Division for the sexual
assault of a child conviction and confinement for life in the Texas Department
of Criminal Justice, Institutional Division for the aggravated sexual assault of
a child conviction.  The trial court ordered the sentences to run
consecutively.  In three issues, appellant argues (1) the evidence is
insufficient to sustain the aggravated sexual assault conviction, (2) appellant=s due process
rights under the Fourteenth Amendment were violated because appellant had to
disprove the aggravating factor in the sexual assault statute, and (3) the
prosecutor made improper arguments during voir dire, improperly cross-examined
appellant, and was improperly allowed to read the jury charge.  We affirm.

Factual and Procedural
Background

K.B.
was born on November 14, 1986, and grew up in Needville, Texas.  In 1999, K.B.=s mother began
dating appellant.  According to K.B., appellant sexually assaulted her on
several occasions.

K.B.
testified the first inappropriate contact appellant had with her occurred while
she was home alone with appellant.  K.B. testified she was walking in the
hallway when appellant grabbed her and began rubbing her breasts with his
hands.  K.B. testified she pulled away from him and ran next door to her aunt=s house.  K.B. did
not tell anyone what happened because she was scared.

K.B.
testified the first sexual contact occurred when her mother accused her of
having sex.  According to K.B., her mother accused her of having sex and told
her to go to her bedroom, take off her pants, and lie on the bed so she could Acheck@ her.  K.B.
testified she did what her mother asked, and appellant came in the room and had
sexual intercourse with her.  K.B. testified appellant stuck his private area
into hers and it hurt her.  K.B. testified after appellant left the room she
stayed in her bed and cried.  According to K.B., she did not tell anyone what
had happened because she was embarrassed and scared.  K.B. testified this first
incident occurred during the summer after her seventh grade year.








The
next incident occurred when K.B.=s mother called
her into her room and instructed her to put on a nightgown.  K.B. testified
after she put on the nightgown,  appellant came into the room and started
having sexual intercourse with her.  K.B. testified appellant kissed her lips
and her breasts while he was having sex with her.  K.B. testified she did not
try to do or say anything because she was too scared.  According to K.B., this
incident occurred Aa couple of weeks@ after the first
incident.  K.B., however, also testified she did not remember how old she was
when these two incidents occurred.  K.B. testified she thought it happened the
summer of her seventh grade year, but it could have occurred after she started
the eighth grade.  On cross-examination, however, K.B. testified the Asecond time@ occurred when she
was in the eighth grade.

K.B.
testified about a third incident that occurred while she was sleeping. 
According to K.B., she was sleeping on her stomach, and appellant came into her
room and got on top of her.  K.B. testified she woke up with appellant lying on
top of her.  Appellant then proceeded to have sexual intercourse with K.B. 
K.B. testified she did not tell anyone what appellant had done because she was
afraid she would be separated from her brothers.  K.B. also testified at some
point her mother told her if she made noises while appellant was having sex
with her, it would make it easier for him.

After
K.B.=s ninth grade
year, she went to live with her track coaches, Glenda and Joe Payton.  Shortly
after K.B. moved in with the Paytons, K.B.=s mother and
appellant moved to West Columbia.  According to K.B., when she would visit her
mother in West Columbia, appellant would have sex with her.  K.B. testified her
mother threatened that if K.B. quit visiting, she would have to leave the
Paytons and move to West Columbia. 








The
first person K.B. told was her best friend Jarvis Garrett; however, K.B. made
Garrett promise not to tell anyone else because she was embarrassed and
scared.  K.B. testified she told Garrett about the abuse either the summer of
her seventh grade year or the beginning of her eighth grade year.  Two or three
years later, she told Glenda about the abuse.  K.B. also gave Glenda a letter
she had previously written that talked about the abuse she had suffered.  After
telling Glenda, K.B. called her aunt and her cousin and told them about the
abuse as well.  Glenda, Joe, and K.B.=s aunt took K.B.
to the police station.

Glenda
testified her and her husband coached K.B.=s track team, and
they let K.B. move in with them after her ninth grade year.  According to
Glenda, when they first met K.B. she was very shy and did not talk much. 
Glenda testified K.B. appeared unhappy and uncomfortable around men.  Glenda
testified after K.B. would win a race, she would run under the bleachers and
cry.

Appellant
testified he had a good relationship with K.B. and denied all the allegations. 

After
a jury trial, the jury found appellant guilty of sexual assault of a child and
aggravated sexual assault of a child.  The jury assessed punishment at fifty
years= confinement in
the Texas Department of Criminal Justice, Institutional Division and a $10,000
fine for the sexual assault of a child conviction and confinement for life in
the Texas Department of Criminal Justice, Institutional Division and a $10,000
fine for the aggravated sexual assault of a child conviction.  The trial court
ordered the sentences to run consecutively.  This appeal followed.  

Discussion

A.      Is the
Evidence Legally Sufficient to Sustain Appellant=s Conviction for
Aggravated Sexual Assault of a Child?








In his
first issue, appellant argues the evidence is legally insufficient to sustain
his aggravated sexual assault conviction.[1] 
More specifically, appellant argues the State failed to prove K.B. was under
the age of fourteen when appellant assaulted her.[2]


1.       Standard
of Review

In a legal sufficiency
review, we view all the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Salinas v.
State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The jury, as the sole
judge of the credibility of the witnesses, is free to believe or disbelieve all
or part of a witness=s testimony.  See Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988).  We do not engage in a second evaluation of the weight
and credibility of the evidence, but only ensure the jury reached a rational
decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris
v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

2.       Analysis

To
establish the offense of aggravated sexual assault of a child, the State must
prove appellant intentionally or knowingly caused the penetration of the anus
or sexual organ of a child by any means . . . and . . . the victim was younger
than fourteen years of age.  See Tex. Penal Code Ann. '
22.021(a)(1)(B)(i), 22.021(a)(2)(B).  The jury charge read as follows: 








[I]f you find and believe from the evidence beyond a
reasonable doubt, that the defendant, WILLIE ALVIN GRIFFIN, SR., on or about
the 15th day of October, 2000 in the County of Fort Bend and State
of Texas, did intentionally and knowingly cause the sexual organ of the
Defendant to contact or penetrate the female sexual organ of [K.B.], a child
younger than 14 years of age, who was not the spouse of the Defendant, you will
find the defendant guilty of the offense of Aggravated Sexual Assault of a
Child as charged in the indictment. 

The charge also instructed the jury the State was not
required to prove the exact date alleged in the indictment.  It explained that
the Aon or about the 15th
day of October, 2000" language meant any day prior to the date of the
filing of the indictment and within the Statute of Limitations.  This
instruction was in accordance with well-settled law from the Texas Court of
Criminal Appeals.  See Yzaguirre v. State, 957 S.W.2d 38, 39 (Tex. Crim.
App. 1997).

K.B.
testified she was born on November 14, 1986, and turned fourteen on November
14, 2000.  The State introduced a chart into evidence that laid out K.B.=s age at the start
of each school year and her age at the end of each school year starting in the
seventh grade.  According to the chart, in August 1999, which was the start of
K.B.=s seventh grade
year, she was twelve years old and by the end of the school year, K.B. was
thirteen years old.  In August 2000, which was the start of K.B.=s eighth grade
year, K.B. was thirteen years old and by the end of the school year, K.B. was
fourteen years old.

During
trial, K.B. testified the Afirst incident@ happened during
the summer after her seventh grade year and before her eighth grade year. 
While K.B. did not specify exactly what she meant by the Afirst incident,@ it appears she is
talking about the time her mother accused her of having sex and wanted to Acheck@ her out.  K.B.
then testified about the time when her mother gave her a nightgown and
instructed her to put it on.  After K.B. put the nightgown on, appellant came
into the bedroom and had sexual intercourse with her.  When the prosecutor
asked K.B. how long after the first incident did the nightgown incident occur,
K.B. testified Aa couple of weeks.@  Additionally,
K.B. testified she told Garrett about the abuse either the summer after her
seventh grade year or the beginning of her eighth grade year.  According to the
chart, K.B. was thirteen years old during the summer after her seventh grade
year and the beginning of her eighth grade year.    








K.B.
also testified at one point she did not remember how old she was the first time
appellant abused her.  K.B. testified AI think it was
still in my summer of my seventh grade year,@ but she also
stated it could have been after she already started eighth grade.  On
cross-examination, K.B. testified she was in the eighth grade the time her
mother gave her the nightgown and appellant had sex with her.  Also, a letter
K.B. wrote explaining the abuse she had suffered was admitted into evidence. 
In the letter, K.B. stated A[i]t started my eight grade year when my
mother let the [unthinkable] happen.@

The
jury is the exclusive judge of the facts proved and the weight of the
testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979).  The fact a
witness makes contradictory or inconsistent statements does not destroy her
testimony as a matter of law.  McDonald v. State, 462 S.W.2d 40, 41
(Tex. Crim. App. 1971) (evidence legally sufficient to support aggravated
assault conviction based on prosecuting witness=s testimony even though her testimony
was inconsistent); Reed v. State, 991 S.W.2d 354, 360 (Tex. App.CCorpus Christi 1999, pet. ref=d) (evidence legally and factually
sufficient to support aggravated sexual assault of a child conviction based on
victim=s
testimony even though his testimony was contradictory).  The weight to be given
contradictory testimonial evidence is within the sole province of the jury
because it turns on an evaluation of credibility and demeanor.  See Muniz,
851 S.W.2d at 246; Reed, 991 S.W.2d at 360.  As fact
finder, the jury is entitled to judge not only the credibility of each witness,
but to accept some portions of a witness' testimony and reject other portions. 
See Moreno, 755 S.W.2d at 867.  Therefore, the jury was entitled to
believe K.B.=s testimony
that the abuse occurred during the summer after her seventh grade year, which
was when K.B. was thirteen years old. 








Viewing all the evidence
in the light most favorable to the verdict, we conclude any rational trier of
fact could have found beyond a reasonable doubt appellant was under the age of fourteen when appellant assaulted
her.  See
Salinas, 163 S.W.3d at 737. Accordingly, the evidence is
legally sufficient to sustain appellant=s
conviction for aggravated sexual assault of a child.  Appellant=s first issue is overruled.  

B.      Were Appellant=s Due Process Rights Under
the Fourteenth Amendment Violated?

In his second issue, appellant
argues the burden was shifted requiring him to disprove the allegation that the
child was under the age of fourteen, which was a violation of the due process
clause of the Fourteenth Amendment.  Appellant essentially argues it was
presumed the child was under the age of fourteen, and he was forced to disprove
this presumption. 

1.       Analysis

To preserve error for
appellate review, the complaining party must make a timely, specific objection
and obtain an adverse ruling on the objection.  Tex. R. App. P. 33.1(a); Broxton
v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  To complain on
appeal about lack of due process or due course of law, an appellant must lodge
a proper and timely objection at trial on these grounds. Clarke v. State,
233 S.W.3d 574, 578 (Tex. App.CHouston [14th Dist.] 2007, pet. filed) (citing Briggs
v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990)).  Appellant failed to
object during trial that his due process rights were being violated; therefore,
he has failed to preserve this error for appellate review.  See Clarke,
233 S.W.3d at 578.  Appellant=s second issue is overruled.

C.      Was Appellant
Harmed by Allegedly Improper Actions by the Prosecutor?








In his third issue, appellant raises
three different arguments.[3] 
First, appellant argues  comments made by the prosecutor during voir dire
shifted the burden of proof, constituted comments on the weight of the
evidence, and destroyed the presumption of innocence.  Second, appellant argues
the prosecutor improperly crossed-examined appellant.  Third, appellant argues
the trial court erred in allowing the prosecutor to read one of the jury
charges during the punishment phase.  We will address each argument
separately.  

1.       Prosecutor=s Comments During Voir
Dire

Appellant complains about the
following three comments made by the prosecutor during voir dire: (1) the
defense has absolute subpoena power like the State; (2) the defense is not
required to disclose certain evidence to the State; and (3) during the
guilt/innocence phase of the trial, the jury will not be able to hear if there
are other victims or whether the defendant has committed other offenses.

Appellant admits he did not object to
any of the comments, but he argues the comments constituted fundamental error. 
Absent an objection, a defendant waives error unless the error is fundamentalBthat is, the error creates egregious
harm.  Ganther v. State, 187 S.W.3d 641, 650 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d); see Beltran v. State, 99
S.W.3d 807, 811B12 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  Egregious harm is such harm that
a defendant has not had a fair and impartial trial.  Ganther, 187 S.W.3d
at 650.  

Appellant cites no cases in which
similar voir dire statements were held to be fundamental error, and we are
unable to find any similar cases from our own research.  See Beltran, 99
S.W.3d at 812.  Furthermore, the prosecutor=s comments were not so harmful that
appellant did not receive a fair and impartial trial.  See id. at 811B12 (holding a prosecutor=s statement regarding his personal
opinion that the defendant was guilty was not fundamental error).  Because the
comments were not fundamental error and no objections were made, appellant has
waived this issue.  See id. at 812.    

2.       Prosecutor=s Cross-Examination

Appellant next complains about certain
questions asked on cross-examination by the prosecutor.  The following exchange
is the portion appellant complains about:

Q:      Let=s
talk first about your disappearance from the West Columbia area.  You=re
claiming that you went to Houston?

A:      Yes.








Q:      And what was the purpose of you going to Houston?

A:      To live with friends.

Q:      And what friends were those?

A:      Lynn King.

Q:      Excuse me?

A:      Lynn King.

Q:      Lynn King?

A:      Yeah.

Q:      Who else?

A:      That was it.

Q:      Is Lynn King going to come in here and tell us
that you were living with her all that time?

A:      Probably, yes.

. . . .

Q:      So, you had contact with a lot of people when you
were living in Houston between June of 2004 and November of 2005, is that
correct?

A:      Yes.

Q:      Well, are any of them going to come in and
verify that you were living in Houston?

MR. RACER:          Objection, Your Honor, trying to
change the burden of proof in the case.

MS. MORTON:       I=m
not the one that said B

THE COURT:          That objection will be overruled.

Q:      (By Ms. Morton) Is there anyone else that come
(sic) can come in here and support that you were living in Houston for, what, a
year and a half?

Appellant argues this line of
questioning along with the prosecutor=s comments in voir dire regarding the defense=s power to subpoena suggested the
defense had the burden of bringing forth evidence to exonerate appellant.








On direct examination, appellant testified
he moved from West Columbia to Houston.  On cross-examination, the prosecutor
questioned appellant about whether there was any person who could verify
appellant was living in Houston from June 2004 until November 2005.  Appellant=s assertion that the State attempted
to shift the burden of proof is unfounded.  Texas Rule of Evidence 611(b)
provides A[a]
witness may be cross-examined on any matter relevant to any issue in the case,
including credibility.@  Tex. R. Evid. 611(b).  The extent of cross-examination
for a showing of bias or credibility is within the trial court's discretion,
and its decision is not subject to reversal on appeal absent a clear abuse of
discretion.  Chambers v. State, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993);
Caron v. State, 162 S.W.3d 614, 617 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  A
defendant who exercises his right to testify is subject to the same rules
governing examination and cross-examination as any other witness, whether he
testifies at the guilt-innocence stage or at the punishment stage of the
trial.  Felder v. State, 848 S.W.2d 85, 99 (Tex. Crim. App. 1992); Caron,
162 S.W.3d at 617.  In Texas, the scope of cross-examination is wide open, and
once the defendant testifies at trial, he opens himself up to questioning by
the prosecutor on any subject matter that is relevant.  Felder, 848
S.W.2d at 99; Caron, 162 S.W.3d at 617.  In the instant case, the
State's questions on cross-examination were relevant to appellant's
credibility, specifically, his testimony that he moved from West Columbia to
Houston.  This line of questioning was not an attempt to shift the burden of
proof, but instead, tested appellant's credibility in an attempt to discover
the truth.  See Caron, 162 S.W.3d at 617.

3.       Prosecutor
Reading the Jury Charge

Appellant also argues it was error for
the trial court to allow the prosecutor to read one of the jury charges during
the sentencing phase of the trial.  Appellant argues by allowing the 
prosecutor to read the law, the jury was left with the impression the court was
favorable to the State and that defense counsel could not be trusted.  

The record reflects at the punishment
hearing the trial judge read the jury charge for cause number 40,151A.  The
judge began to lose his voice, so he asked the prosecutor to read the jury
charge for cause number 40,154A.  Appellant did not object at trial to the
prosecutor reading the charge.  To preserve error for appellate review, the
complaining party must make a timely, specific objection and obtain an adverse
ruling on the objection.  Tex. R. App. P. 33.1(a); Broxton, 909 S.W.2d
at 918.  Accordingly, appellant failed to preserve this error for review. 
Appellant=s third
issue is overruled.

 








Conclusion

Having overruled appellant=s three issues, we affirm the
judgments of the trial court in cause numbers 40,151A and 40,154A.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

Judgment rendered and Memorandum
Opinion filed January 15, 2008.

Panel consists of Chief Justice Hedges
and Justices Anderson and Boyce.

Do Not Publish C Tex.
R. App. P. 47.2(b).

  









[1]  Appellant argues the evidence is insufficient to
sustain his conviction but does not specifically state whether he is
challenging the factual or legal sufficiency of the evidence; however,
appellant only states the standard of review for a legal sufficiency
challenge.  Therefore, we hold appellant has only challenged the legal
sufficiency of the evidence and has waived a factual sufficiency review.  See McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim.
App. 1997) (holding a factual sufficiency claim that merely includes a general discussion
of the evidence but fails to include any argument as to how or why the evidence
is insufficient under a factual sufficiency
standard is inadequately briefed). 





[2]  Within this issue, appellant also attempts to argue
the State failed to inform appellant of the specific offense for which it
intended to prosecute.  Generally, when the evidence shows two or more acts of
sexual assault, each of which is an offense for which the defendant may be
convicted, and the indictment charges only one offense, the State is required
to elect which act it will rely upon to secure a conviction if the
accused makes a motion for election.  Hendrix v. State, 150 S.W.3d 839,
852 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d) (citing Crawford v. State, 696 S.W.2d 903,
906 (Tex. Crim. App. 1985)).  The record reflects no request by appellant in
the trial court that the State elect the separate acts upon which it was
relying for a conviction.  The absence of a request for election by appellant
waives this issue on appeal.  Tex. R. App. P. 33.1; Hendrix, 150 S.W.3d
at 852.  





[3]  The State argues by combining more than one alleged error in a single
ground, appellant has presented a point of error that is multifarious and,
therefore, should be denied on that ground alone.  See Brooks v. State,
642 S.W.2d 791, 793 (Tex. Crim. App. 1982).  While it is true appellant=s third issue is multifarious, we
will address each alleged error in the interest of justice.