

# NUMBERS 13-11-00271-CR & 13-11-00272-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DEAN LIECK,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

### On appeal from the 130th District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

In this consolidated appeal involving sexual crimes against a child, appellant,

Dean Lieck, appeals two issues:  (1) that the evidence is legally insufficient to support

the guilty verdicts on aggravated sexual assault of a child and indecency with a child,

and (2) that the trial court erred when it did not order the state to elect its offense.[1] *See* TEX. PEN. CODE ANN. § 22.021, 21.11 (West 2011). Because we hold that the complainant's outcry was enough to sustain the verdict, and that Lieck did not suffer egregious harm from the failure to elect an offense, we affirm.

## I. BACKGROUND

Lieck, a City of Palacios police officer at the time of the alleged occurrences, was involved with C.G.,[2] a fellow police officer. During their relationship, which lasted from approximately 2003 to 2006, they shared an apartment with C.G.'s then four-year-old daughter, M.G. The events leading to this case unfolded after the couple ended their relationship and living arrangement.

### A. The State

#### 1. Charlotte Brown

The State began its case-in-chief by calling Charlotte Brown to testify. Brown is an investigator for the Matagorda County Sheriff's office. Brown explained that her work colleague, C.G., called her one night in 2008 to say that her daughter, M.G., had alleged that her great-grandfather had inappropriately touched her. C.G. planned to take M.G. to the Children's Advocacy Center in Calhoun County to discuss the incident and asked Charlotte to come along because of her past experience with child interviews and also for moral support. While Brown watched the interview take place on the monitor, she learned that it was not M.G.'s first time to be sexually assaulted. M.G. stated "this has happened to me before . . . it had happened with Dean." M.G.

---

[1] The two cause numbers associated with this appeal are: 13-11-00271-CR (indecency with a child) and 13-11-00272-CR (aggravated sexual assault of a child)..

[2] We will refer to the mother by her initials to protect the minor's identity.

disclosed that her mother's previous boyfriend, Lieck, had touched her in a similar manner years ago in Matagorda County.

Because Matagorda County was in Brown's jurisdiction, Brown had C.G. and M.G. speak with her at a later date to begin an investigation. Brown later called Lieck to make an appointment for an interview. When she spoke to him, she explained that some allegations had been made against him. Brown testified that she found it curious that Lieck did not ask who made the allegations or the nature of the allegations. Although Lieck refused to give Brown his telephone number (she had reached him at his mother's house), he did agree on a date and time to meet with her. Lieck missed the first appointment. Brown called to schedule a second appointment, and Lieck informed her that he wanted the meeting to occur at his attorney's office, even though he had not retained an attorney yet. Brown asked Lieck to call her back when he retained one, but he never returned her call.

When Brown finally conducted her noncustodial interview with Lieck, she explained the allegations made against him. During the interview, Lieck explained that, when he was involved with C.G., they both worked for the City of Palacios Police Department on alternating shifts so that one of them could care for M.G. while the other was working. He denied that anything inappropriate occurred between him and M.G. and signed the following written statement:

> I have never touched [M.G.] in an inappropriate way. Although we were home alone together while [C.G.] was working, I made sure we always maintained a father-daughter relationship. [M.G.] called me "Big Daddy." [C.G.] is the one that gave me that name for [M.G.] to call me.
>
> [M.G.] did walk in on me in the bathroom a couple of times. Our bathroom door wouldn't close all the way and she would come in without knocking. I finally put a hook latch on it. One time [M.G.] walked into the bedroom

3

when I was watching an adult movie. I immediately told her to get out and not to come in without knocking. We kept the adult movies separate from [M.G.]'s movies. . . .

I do remember one time when we lived in Palacios. [M.G.] and I were outside and she was riding her bike. She fell and hurt herself in the groin area. I asked her if she was okay and she told me it hurt. Then I told her that when her mama got home she could look at it. Then [M.G.] told me that Papa touched her down there. I don't know which grandpa she was referring to, but "Papa" is what she called her grandpas. I asked her if he was bathing her and she told me no. I asked her how many times he touched her and she told me only once and it was a long time ago. I don't remember if I told [C.G.] or not when she got home but I think I did.

I don't know why [M.G.] would say I molested her. I would never touch her that way.

Brown testified that Lieck, again, would not tell her where he was living or give her his telephone number. When she eventually obtained a warrant for his arrest, she called Lieck's mother and left a message for Lieck to contact her. When Lieck did not return her call, she called the San Antonio Police Department Sex Crimes Division, Medina County Sheriff's Office, and Office of the Attorney General–Fugitive Task Force's office for assistance to locate him. Lieck was eventually arrested.

Brown also noted that, because Lieck was in law enforcement at the time M.G. made an outcry to him about "Papa's" inappropriate touching, it was "absolutely" his responsibility to follow up with that disclosure.

### 2. Jocelyn Reher

Jocelyn Reher is a school counselor at Linnie Roberts Elementary in Bay City, Texas. Reher explained that, in 2008, all third-graders at her school watched a video called, "It's Your Body, You're in Charge." The video showed a series of vignettes which explained the difference between "good" touches and "bad" touches. Reher testified that shortly after seeing this video at school, M.G. made an outcry to her

4

grandmother that her great-grandfather "Papa Jack" had inappropriately touched her.

### 3. C.G.

C.G., M.G.'s mother, testified that M.G. and Lieck appeared to have a close father-daughter relationship. During her relationship with Lieck, she never suspected or worried about M.G. spending time with Lieck. She noted that M.G. began wetting her bed, having nightmares, and suffered from urinary tract infections in 2005, but she attributed these changes to M.G. starting kindergarten. In 2006, all three moved from Palacios to Bay City. Soon after this move, C.G. and Lieck amicably ended their relationship.

In November of 2008, C.G. learned from M.G.'s paternal grandmother that M.G. "mentioned that the reason she doesn't get to see one of her other great-grandparents was because that great-grandparent tried to have sex with her." When C.G. asked M.G. about it that evening, M.G. admitted that "Papa Jack tried to have sex with her." C.G. called Brown for advice, and Brown advised her to contact the Calhoun County Sheriff's Department, because the acts had occurred there. C.G. was horrified to learn that M.G. then made allegations against Papa Jack and Lieck when she took her daughter to the Harbor Children's Alliance Center in Calhoun County for a forensic interview.

C.G. claimed that Lieck never told her about M.G. walking in on him while in the restroom or while watching an adult film, about a bicycle accident where M.G. hurt her groin area, or that M.G. had made an outcry to him about Papa Jack's improper touching.

5

### 4. Beverly Smith

Beverly Smith is the Victim Services and Community Education Coordinator for the Harbor Children's Alliance and Victims Center in Port Lavaca, Texas in Calhoun County. Smith explained the general protocol she is trained to use with children who are victims of sexual assault. She then testified about her forensic interview with M.G. Smith explained that M.G. used different words to talk about body parts. She called a penis a "thing" or "nuts"; buttocks were called "bahookie"; and a vagina was a "tutu."

M.G. told Smith that Lieck asked her to watch a "sex movie" with him, and after they had watched for a while, he asked M.G. if she wanted to do what they were doing in the movies. At first, she replied no. Eventually, though, M.G. explained that Lieck got on top of her, put his "thing" between her legs, and moved up and down until some "green stuff" came out. Later, Lieck asked M.G. to wipe her "tutu" with a baby wipe so that he could lick it. M.G. testified that Lieck wanted to put his "thing" in her "bahookie," because that is what occurred in the movie, but she told him no. Finally, M.G. said that Lieck asked her to put her mouth on his "thing" and that she refused. Instead, she touched it with her hand and moved her hand up and down.

Smith stated that, based on her judgment and experience as a child forensic interviewer, she believed M.G. was telling the truth.

### 5. M.G.

Finally, M.G. testified. M.G. recalled that when she was in pre-kindergarten, Lieck would ask her to choose an adult movie for them to watch together while lying on the bed Lieck shared with C.G. Then he would ask if M.G. would like to do any of the things they were seeing on the movie. She testified that Lieck "lick[ed] her vagina,"

6

"wanted [her] to put [her] mouth on his penis," and that she moved her hand "up and down" his penis until he ejaculated or "green stuff came out."

M.G. also remembered Lieck placing his penis between her legs and moving back and forth. His penis "touched right up near [her] tutu and [her] bahookie," but never penetrated her because she asked him not to. M.G. testified that sometimes Lieck did this when he was lying on top of her; other times this occurred when they were both lying on their sides. She claimed that Lieck would then ask her to get a towel after he ejaculated so he could wipe himself clean.

M.G. testified that these events occurred more than one time while her mother was at work. She stated that Lieck told her not to tell anyone about this. M.G. stated that Lieck never threatened her or her mother, but she felt like "[Lieck] would come and hurt my mom" if she told anyone.

## B. The Defense

Lieck took the witness stand to state that he was invoking his Fifth Amendment right not to testify. *See* U.S. CONST. amend. V.

## C. Conviction and Appeal

The jury convicted Lieck of aggravated sexual assault, a first-degree felony, and indecency with a child, a second-degree felony. *See* TEX. PEN. CODE ANN. § 22.021, 21.11. This consolidated appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

## A. Applicable Law

The *Jackson v. Virginia* legal-sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support

each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We thus apply the *Jackson* standard to our review and inquire whether "considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt" in this case. *Brooks*, 323 S.W.3d at 899. In our analysis, we are required to "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight given to their testimony." *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979).

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc); *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd).

Here, to prove aggravated sexual assault, the State had to prove that: (1) Lieck (2) intentionally or knowingly, (3) caused the sexual organ of M.G. to contact Lieck's sexual organ. *See* TEX. PEN. CODE ANN. § 22.021. To prove indecency with a child, the State had to establish that: (1) Lieck, (2) with M.G., a child younger than 17 years of age, (3) engaged in sexual contact with the child or caused the child to engage in sexual contact; or (4) with intent to arouse or gratify the sexual desire of any person (5) exposed

8

his anus or any part of his genitals or (6) caused M.G. to expose her anus or any part of her genitals.  *See id.* § 21.11.

**B.  Discussion**

### 1. Aggravated Sexual Assault

As part of his first issue, Lieck contends that there was insufficient evidence to support his conviction for aggravated sexual assault.  *See id.* § 22.021.  Texas law recognizes that the testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault.  TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978).  Courts give wide latitude to testimony given by child victims of sexual abuse.  *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc).  The victim's description of what happened to her need not be precise, and she is not expected to express himself at the same level of sophistication as an adult.  *Id.*  There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *Garcia*, 563 S.W.2d at 928; *Kemple v. State*, 725 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1987, no writ).  Further, outcry testimony alone can be sufficient to sustain a conviction for aggravated sexual assault.  *Rodriguez v. State*, 819 S.W.2d 871, 873–74 (Tex. Crim. App. 1991); *Kimberlin v. State*, 877 S.W.2d 828, 831-32 (Tex. App.—Fort Worth 1994, pet. ref'd).

Here, M.G. told Smith during her forensic interview that Lieck got on top of her, put his "thing" between her legs, and moved up and down until some "green stuff" came out.  His penis "touched right up near [her vagina] and [her buttocks]," but never penetrated her.  She testified that these events occurred more than one time.

Considering the evidence in the light most favorable to the verdict, we hold that the jury was rationally justified in finding guilt beyond a reasonable doubt for the crime of aggravated sexual assault. *See* TEX. PEN. CODE ANN. § 22.021. The evidence was sufficient to prove that Lieck intentionally or knowingly caused his sexual organ to contact M.G.'s sexual organ.

### 2. Indecency with a Child

Lieck also argues that the evidence was insufficient to sustain his conviction for indecency with a child. *See id.* § 21.11. Again, we reiterate that the testimony of a child sexual abuse victim alone is sufficient to support a conviction. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005). M.G.'s outcry to Smith alone can support this conviction. M.G. testified that Lieck would ask her to wipe her "tutu" with a baby wipe so he could "lick her vagina." He also had her touch his "thing" with her hand. This evidence supports that Lieck engaged in sexual contact with M.G., a child younger than 17. *See* TEX. PEN. CODE ANN. § 21.11.

There was additional evidence the jury could have considered that put Lieck's credibility at issue. For example, Lieck never asked Brown what the allegations against him were or who made them when she first asked him for an interview. In addition, he, as a law enforcement officer, did not report M.G.'s outcry about Papa Jack to her mother C.G. or to the appropriate authorities. Further, Lieck never told C.G. about any instances where M.G. walked in on him in the restroom or watching "adult films", or about an alleged bicycle fall which hurt her groin. The jury is the "sole judge of a witness's credibility, and the weight to be given the testimony," which requires us as the reviewing court to defer to the jury on these determinations. *Brooks*, 323 S.W.3d at 902 n.19.

Here, Lieck's written statement of what occurred could have been compromised by his inconsistent and unexplainable behavior.

Viewing the evidence in the light most favorable to the verdict, we hold that the jury was rationally justified in finding that Lieck committed the crime of indecency with a child beyond a reasonable doubt. *See* TEX. PEN. CODE ANN. § 21.11. We overrule Lieck's first issue.

### III. ELECTION OF OFFENSES

By his second issue, Lieck contends that the trial court erred when it did not order the State to elect its offense. "The general rule is that where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction." *See O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988) (citing *Crawford v. State*, 696 S.W.2d 903 (Tex. Crim. App. 1985). By doing this, the jury's consideration is limited to the offense the State has chosen to pursue. *See Ex Parte Goodbread*, 967 S.W.2d 859, 861 n.2 (Tex. Crim. App. 1998). The State, in response to this argument, contends that an election of offense is improper in this case because there are two separate indictments and separately alleged acts in each indictment. The State urges that Lieck was charged with sexual assault and indecency with a child, different charges that have different statutory elements*. See Hiatt v. State*, 319 S.W.3d 115, 126 (Tex. App.—San Antonio 2010, pet. ref'd) (holding that "separate charges of indecency with a child and sexual assault of a child are proper when the evidence indicates separate offenses took place). Thus, according to the State, the election was unnecessary. We agree. There was no need for the State to elect an offense when

11

the charges were for different statutory crimes with different evidentiary burdens. We conclude that the trial court did not err.

The degree of harm required to reverse the trial court's judgment depends on whether the appellant objected to the charge before it was given to the jury. *Ngo v. State*, 175 S.W.3d 738, 743. If the defendant has properly objected to the charge, we need only find "some harm" to reverse the trial court's judgment. *Id.* at 743–44 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). When the defendant fails to object, however, or states that he has no objection to the charge, "we will not reverse for jury-charge error unless the record shows egregious harm' to the defendant." *Id.* Harm is egregious if it deprives the accused of a "fair and impartial trial." *Almanza*, 686 S.W.2d at 172. However, because we have found no error here, no harm analysis is required. *See Ngo, 175 S.W.3d at 743*; *see also Rodriguez v. State*, No. 13-06-393-CR, 2008 Tex. App. LEXIS 1463, at **7–8 (Tex. App.—Corpus Christi Feb. 28, 2008, no pet.) (mem. op., not designated for publication).

Accordingly, we overrule Lieck's second issue.

## IV. CONCLUSION

Having overruled both of Lieck's issues, we affirm the trial court's judgments.

 

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
12th day of July, 2012.