No. 2430.

## Henry Coward v. The State.

1. THEFT—INDICTMENT.—Inasmuch as asportation is not necessary in this State to constitute theft, and inasmuch as the marking and branding of an animal can not be accomplished without an actual manual possession of the same by the person so doing, an illegal marking and branding of an animal for the purpose of appropriating the same will evidence a fraudulent taking. But note the opinion for a state of proof which would more properly support an indictment for defacing or altering brands, as that offense is defined by article 760 of the Penal Code.

2. SAME—CHARGE OF THE COURT—EVIDENCE—CASE STATED—JUDGMENT. The indictment charged the appellant with the theft of "one head of neat cattle." The proof shows that the cow of the alleged owner, with her original ear marks changed into the ear marks of the appellant, was found in the pen of the appellant, the appellant and another being present. To the owner's claim of property, the appellant asserted no counter claim, nor did he offer any explanation of his possession, but helped to turn the cow out of the pen. Afterwards, a yearling, the offspring of the cow, was found upon the range, both the brand and the ear marks of the owner of the cow, originally upon it, having been changed to the brand and ear marks of the appellant. *Held*, that the proof should have

been made to designate which of the animals was referred to in the in-
dictment, and the charge of the court should have limited the evidence
respecting the other animal to the legitimate purpose for which it was
received. For the same reason,—that it does not identify the animal re-
ferred to in the indictment,—the evidence is insufficient to support the
judgment of conviction.

3. SAME—POSSESSION OF RECENTLY STOLEN PROPERTY.—The charge of the
court was otherwise erroneous inasmuch as, although the proof estab-
lished an unexplained possession of property recently stolen, it failed to
instruct the jury upon the law applicable to that phase of the case.

APPEAL from the District Court of Edwards. Tried below be-
fore J. H. Clark, Esq., Special Judge.

The conviction in this case was had under an indictment which
charged the appellant with the the theft of "one head of neat cat-
tle," the property of William Kelso, Sr. The penalty assessed
against the appellant was a term of two years in the peniten-
tiary.

William Kelso, the first witness for the State, testified that he
lived in Edwards county, Texas, and had but a slight acquaint-
ance with the defendant. The witness, during the month of
April, 1887, owned a certain cow and her yearling calf, which
ran on the range near his house. The witness's brand on the
yearling was a character or device which the witness could not
make. About the last of April or the first of May, 1887, the wit-
ness and his son, James Kelso, riding on the range, found the
said cow and yearling. The witness's cattle ear mark, which
was a crop off the left and an underbit in the right ear, had been
recently changed to a crop off the left and an overslope and un-
derslope off the right ear on each animal, and the witness's
brand on the yearling had been recently burned or blurred out,
and that animal fresh branded BOY on the side and B on the
hip. The said fresh brands and ear marks, the witness under-
stood, belonged to the defendant, though witness did not know
that fact of his own knowledge. The brand on the cow had not
been changed or interfered with. Witness and his son drove the
said animals to Nobles's pen, where they examined them in the
presence of Nobles, Kirchner and Ira Wheat. The blood on the
ears of the animals indicated that the changes had been made
on the two animals about the same time, and not more than a
week before. Independent of their marks and brands, the wit-
ness knew his said animals by their flesh marks. He never gave
permission to the defendant or any other person to take or disfig-

ure either of said animals. The defendant lived about five miles from the range of the witness's animals. Mr. Nobles, Mr. Kirchner, Mr. John Sweeten, Doctor Runnells and others lived in the same neighborhood. Witness had lived in the neighborhood but a short time when the brand and ear marks on his animals were disfigured. He brought those animals with him when he removed to the neighborhood. This all occurred in Edwards county, Texas, about the last of April or the first of May, 1887.

William Kelso, Jr., testified, for the State, that about May 1, 1887, he went to the place of Charles Franks, in Edwards county, and in the cattle pen on the said place he found a cow which he recognized at once as the property of his father, the witness W. Kelso, Sr. The original ear marks, as described by the preceding witness, had been recently changed to a crop off the left and an over and underslope off the right ear. The cow's ears were still bloody, from which fact the witness concluded that the change was made on the preceding day. The defendant and one Ab Benton were in the pen at the time. Witness claimed the cow as the property of his father, and cut her out of the pen, assisted by defendant and Benton. Neither defendant nor Benton made any explanation of their possession of the cow when the witness claimed her as the property of his father. The fresh marks, crop off the left and over and underslope off the right ear, into which the cow's mark had been changed, were the cattle marks of defendant's brother, W. A. Coward, who lived in San Marcos, Texas. W. A. Coward's cattle brand was BOY on the side, and B on the hip. W. A. Coward's cattle in Edwards county were in the care, control and management of the defendant. On the next day after the witness turned his father's cow out of Franks's pen, he found her and her yearling calf on the range, about a mile and a half from the Franks pen. The marks on the yearling, originally the same as on the cow, had been, about the same time as on the cow, changed in like manner, and the brand of witness's father on the yearling had been blurred out and the W. A. Coward brand, BOY on the side, and B on the hip, put on. The new brands were very fresh, and were evidently put on at the same time that the ear marks of the animals were changed. Leaving the cow and yearling on the range, the witness started on to his work. Meeting his brother James, he told him of the discovery of the cow and yearling, and the alterations of the brand and ear marks, and told him to tell their father to look out

for them, as he, witness, then working for other parties, could not do so.

James Kelso, the son of the first and the brother of the second State witness, testified, for the State, substantially as did his father.

Sam Nobles testified, for the State, that he lived in Edwards county, Texas. Late in April or early in May, 1887, W. Kelso, Sr., and his son James brought a cow and yearling to his pens and examined them in his presence. The ear marks on each of the animals had been recently changed from their original mark into a crop off the left and an over and under slope in the right ear, and the original brand on the yearling had been as recently burned over, and the BOY on the side and B on the hip brand placed on it. The new brand and ear marks were the mark and brand of W. A. Coward, of San Marcos, Texas, who, so far as witness knew, had not been in Edwards county for two years. It was witness's understanding that defendant had the care and management of W. A. Coward's Edwards county cattle. The disfiguration of the marks and brands must have been done about four days when witness saw the animals at his pen, as stated.

The State closed.

George Maule was the first witness for the defense. He testified that he had known the defendant for four years. Defendant controlled the BOY—B brand of cattle in Edwards county. The mark which belonged to the brand was a crop off the left and an over slope and under slope off the right ear. That mark and brand was once owned by Mr. Franks.

Ab. Benton was the next witness for the defense. He testified that he lived on Lost creek, about five miles distant from Franks's cattle pen, in Edwards county. The fresh marked cow claimed by W. Kelso, Jr., as the cow of his father, was placed in the Franks pen by Franks and the witness. That cow, being branded HISN, which was Kelso's brand, fell in with a herd being driven by Franks and witness, and was driven on to the pen with the herd, where she was freshly marked in the old Franks mark. After dinner, a few days later, Franks left home, leaving the cattle in the pen. Two or three hours later the defendant rode up, and went with the witness to the pen. William Kelso, Jr., soon came up, claimed the said cow, and cut her out of the herd and drove her off. Neither the witness nor the defendant set up a claim to the cow when young Kelso claimed her, nor did they

explain their possession of the same. The fresh marks were then about three or four days old. Defendant was controlling the BOY—B brand for his brother, who owned it. His brother lived in San Marcos, and had not been in Edwards county for two or three years.

The case was closed by the defense introducing in evidence the bill of sale executed by C. E. Franks on January 20, 1887, conveying to W. A. Coward the BOY—B brand of cattle in Edwards county, Texas. It recited the ear mark as a crop off the left and an over and under slope off the right ear.

No brief for the appellant has reached the Reporters

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant was convicted upon an indictment charging him with the theft "of one head of neat cattle," the property of Wm. Kelso, Sr.

It is shown by the evidence that two animals belonging to the alleged owner were found with their ear marks changed into the ear mark of defendant and the brand upon one of the animals was also obliterated and the brand of defendant placed upon it. One was a cow, the other was a yearling and the calf of said cow. When the cow was first seen after her ear mark was changed, she was in a pen and defendant and another party were present. When she was claimed as the property of Kelso, defendant asserted no claim to her, but helped to turn her out of the pen; nor did he make any explanation as to the fact that the ear mark had been changed into his ear mark. The yearling was found afterwards upon the prairie, with its mother and with its ear marks and brand both changed into the mark and brand of defendant. It occurs to us that the indictment would have made a case less difficult had it been brought for altering or defacing a mark and brand, as provided in article 760 of the Penal Code.

We see no good reason, however, why a fraudulent taking of an animal may not be evidenced by an illegal marking and branding for the purpose of permanently appropriating it, since asportation is not necessary to constitute theft (Penal Code, art. 726), and since it is manifest that marking or branding can not be accomplished without an actual manual possession of the animal by the party engaged in it.

There are two questions which present themselves on the re-

·cord, growing out of the charge of the court with reference to the facts. In the first place, the evidence shows the theft of two animals, whilst the indictment only charges the theft of one. Contemporaneous acts or crimes are admissible as evidence to show motive, intent, identity, etc., and it was admissible to prove, as was done, that the marks upon both animals were defendant's, and further to establish by the facts stated that they must have been changed at or about the same time. This tended to show motive, intent and identity of the party committing the crime. But the question is, which of the two animals stolen was the one named in the indictment, and for which the prosecution was being conducted? If the yearling, then proof that the cow also had been taken was proof of an independent crime, which, though admissible as evidence of motive, etc., was not proof of the crime charged, and vice versa. Under such a state of facts it was all important that it should have been known which animal the prosecution was claiming a conviction for; so that the court could explain and limit in the charge to the jury the only purpose for which the evidence affecting the other animal was admitted. This the court nowhere does in the charge, and the failure to do so is reversible error.

Again, the evidence shows an unexplained possession of property recently stolen, and the jury were not instructed upon the rules of law applicable to such a character of theft. This omission was also error. Upon these two points see Boyd v. The State, ante, 570, and authorities cited.

When considered in the light of the evidence, we have serious doubts if the judgment rendered in this case is sufficiently certain as to enable the accused to plead it successfully in bar of another prosecution for the same offense. The indictment charges the theft of one head of neat cattle. This seems sufficient in so far as that instrument is required to allege. (Willson's Texas Crim. Law., sec 1316.) But the evidence shows that two animals were taken, not at the same time it would seem, but under similar circumstances. It is impossible to identify the particular animal the defendant has been convicted of stealing. If hereafter prosecuted for theft of the cow and he should plead this judgment in bar, could he do so successfully, should the State claim that the present prosecution and conviction were not for theft of the cow but the yearling, or vice versa? Such uncertainty could and should be avoided by a selection on the part

of the prosecution, of the animal for the theft of which the con-
viction would be claimed.

The judgment is reversed and the cause is remanded for
another trial.

*Reversed and remanded.*

Opinion delivered January 28, 1888.