IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1435-10






JESUS E. COSIO, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


HIDALGO COUNTY





 Keasler, J., delivered the opinion for a unanimous Court. 


O P I N I O N 


 We hold that the trial judge's instructions to the jury permitted non-unanimous
verdicts. There were several instances of sexual criminal conduct that could have satisfied
the charged offenses, and the judge failed to instruct the jury that it must be unanimous about
which instance of criminal conduct satisfied each charged. But we conclude that Jesus
Eduardo Cosio was not egregiously harmed. We therefore reverse and remand this case to
the court of appeals for proceedings consistent with this opinion. 

I. Background

 Cosio was charged by indictment with several felony offenses stemming from the
sexual abuse of his former girlfriend's daughter, C.P. In Count One, the State charged Cosio
with aggravated sexual assault of child, alleging that Cosio caused his sexual organ to
penetrate C.P.'s mouth on or about July 31, 2004. In Count Two, which included four
alternative paragraphs, Cosio was charged with aggravated sexual assault of a child,
occurring on or about July 31, 2004. In Count Three, which included one paragraph, Cosio
was charged with indecency with a child by contact, alleging that Cosio touched C.P.'s
genitals on or about July 31, 2007. And finally, in Count Four, with two alternative
paragraphs, Cosio was charged with indecency with a child by contact, occurring on or about
July 31, 2007. Cosio pled not guilty and elected to have a jury trial. 

 During the guilt phase, C.P. testified about the various instances of sexual misconduct:

 The Shower Incident: When C.P. was seven or eight, she was in the family's
only bathroom taking a shower by herself. Cosio came in touched her on her
breasts and "private part, mostly everywhere." 

 

 The Bedroom Incident: About a week after the shower incident, Cosio took
C.P. into the bedroom that he shared with C.P.'s mother. Cosio started by
touching C.P.'s breasts and whole body and kissing her. Cosio removed C.P.'s
underwear. Cosio made her "suck his penis" and then put his penis in her
vagina for about three minutes. Cosio stopped because he expected C.P.'s
mother to return home. 

 

 The Burger King Incident: At some unidentified time, Cosio took C.P. to
Burger King. Cosio made C.P. "suck his penis" on the way to the restaurant
and on the way home.

 

 The Pornography Incident: When C.P. was nine or ten, Cosio took C.P. in
the bedroom that he shared with C.P.'s mother and showed her a pornographic
movie. Cosio took off C.P.'s clothes forced her to "try" the positions that were
shown on the film, including "doggie style." He put his penis in her vagina. 


 After the close of evidence, Cosio requested that the State elect as to the "counts" that
it would proceed under. With respect to Count Two, the State elected to proceed under
paragraph three, which alleged that Cosio penetrated C.P.'s sexual organ. And with respect
to Count Four, the State elected to proceed under paragraph one, which alleged that Cosio
touched C.P.'s genitals. Taken together, the State had to prove the following:

 Count One: On or about July 31, 2004, Cosio caused his sexual organ to
penetrate C.P.'s mouth. 

 

 Count Two: On or about July 31, 2004, Cosio caused his sexual organ to
penetrate C.P.'s sexual organ.

 

 Count Three: On or about July 31, 2007, Cosio touched C.P.'s genitals.

 

 Count Four: On or about July 31, 2007, Cosio touched C.P.'s genitals.


 The jury charges coincided with the State's election and generally instructed the jury,
at the end of each charge, that its verdicts must be unanimous. Cosio did not object to the
charges on the basis that they allowed for non-unanimous verdicts. 

 The jury found Cosio guilty on all counts and sentenced him to twenty-five years'
imprisonment on Counts One and Two and ten years' imprisonment on Counts Three and
Four, as well as a fine. The imposition of the sentences in Counts Three and Four were
suspended, and Cosio was placed on community supervision. 

II. Court of Appeals

 In the Corpus Christi Court of Appeals, Cosio challenged the sufficiency of the
evidence and alleged that the jury charges "contained egregious error" because they
permitted non-unanimous verdicts. (1) The court of appeals, sitting en banc, held that the
evidence was insufficient to support the jury's verdict for one of the convictions for
indecency with a child. (2) C.P.'s testimony that Cosio touched her breasts and "whole body"
during the bedroom incident when she was seven or eight, in the court's opinion, was "too
imprecise for the trier of fact to reasonably infer that Cosio touched her genitals on that
occasion." (3) 

 The court of appeals then held that the charges were erroneous. (4) The evidence
showed that there were at least more than one instance of misconduct that supported each
count, and the charges did not instruct the jury that it had to be unanimous about which
instance constituted the commission of the offenses for purposes of each of the individual
counts. (5) 

 First, regarding Count One, which alleged that Cosio committed aggravated sexual
assault of a child by penetrating C.P.'s mouth with his penis on or about July 31, 2004, the
court observed that there were two specific instances of this type misconduct--the bedroom
and the Burger King incidents. (6) 

 Next, with respect to Count Two--which alleged that Cosio committed aggravated
sexual assault by penetrating C.P.'s vagina with his penis on or about July 31, 2004--the
court of appeals determined that two different incidents supported this alleged offense--the
bedroom and pornography incidents. (7) 

 Finally, regarding the indecency counts--both Counts Three and Four, which alleged
that Cosio touched C.P.'s genitals on or about July 31, 2007, respectively--the charges did
not differentiate between whether the touching of C.P.'s genitals was done with Cosio's hand
or penis. (8) Thus, in total, there were three instances in which Cosio touched C.P.'s genitals:
the shower incident, the bedroom incident, and the pornography incident. (9) 

 The court of appeals then rejected the State's argument that Cosio's failure to request
an election as to the specific incident of misconduct that it was relying on for each count
waived his complaint on appeal. (10) The court noted that while Cosio complained about
unanimity on appeal, his point of error was also based on charge error. (11) Further, the court
recognized that at trial, Cosio did not object to the charges on the basis that they allowed for
a non-unanimous verdicts. (12) Therefore, the court conducted an egregious harm analysis
under Almanza v. State and ultimately held that Cosio was egregiously harmed. (13) 

 Justice Garza dissented and concurred in part. In dissent, Justice Garza claimed that
the charges permitted unanimous verdicts (14) and that, even if there was error, Cosio forfeited
his jury charge complaint because he failed to request that the State elect as to which
incidents of criminal conduct that it wanted to rely upon. (15) Finally, the record did not show
egregious harm. (16)

 We granted the State's petition for discretionary review to consider the propriety of
court of appeals's analysis and decision on the unanimity and charge issues.III. Analysis

 A. Error

 We determine first whether the charges were erroneous, by allowing for the possibility
of non-unanimous verdicts, as held by the majority of the court of appeals.

 Texas law requires that a jury reach a unanimous verdict about the specific crime that
the defendant committed. (17) This means that the jury must "agree upon a single and discrete
incident that would constitute the commission of the offense alleged." (18) There are several
ways in which non-unanimity issues arise, and in this context, based on our precedent, we
have recognized three variations that may result in non-unanimous verdicts as to a particular
incident of criminal conduct (19) that comprises the charged offense. (20) Non-unanimity may
result in each of these situations when the jury charge fails to properly instruct the jury, based
on the indicted offense(s) and specific evidence in the case, that its verdict must be
unanimous. 

 First, non-unanimity may occur when the State presents evidence demonstrating the
repetition of the same criminal conduct, but the actual results of the conduct differed. (21) For
example, if the State charges the defendant with the theft of one item and the evidence shows
that the defendant had in fact stolen two of the same items, the jury's verdict may not be
unanimous as to which of the two items the defendant stole. (22) To ensure a unanimous verdict
in this situation, the jury charge would have to make clear that the jury must be unanimous
about which of the two items was the subject of the single theft. 

 Second, non-unanimity may occur when the State charges one offense and presents
evidence that the defendant committed the charged offense on multiple but separate
occasions. (23) Each of the multiple incidents individually establishes a different offense (24) or
unit of prosecution. (25) The judge's charge, to ensure unanimity, would need to instruct the
jury that its verdict must be unanimous as to a single offense or unit of prosecution among
those presented. 

 And third and finally, non-unanimity may occur when the State charges one offense
and presents evidence of an offense, committed at a different time, that violated a different
provision of the same criminal statute. (26) To ensure unanimity in this situation, the charge
would need to instruct the jury that it has to be unanimous about which statutory provision,
among those available based on the facts, the defendant violated.

 The facts here fall within the scope of the second category, and we addressed this
situation in Francis v. State. (27) There, the State charged Francis with one count of indecency
with a child. (28) At trial, the State presented four separate instances of indecency, with each
instance occurring on different dates. (29) The State later elected to proceed on two of the
instances, one involving the touching of the victim's breasts and one involving the touching
of the victim's genitals. (30) Francis requested that the trial judge require the State to elect
between the two acts, but the judge denied his request. (31) The judge's proposed charge
permitted the jury to convict Francis if it found that he committed either one of the two
incidents of indecency by charging the two offenses in the disjunctive. (32) The trial judge
overruled Francis's objection to the charge. (33) The jury subsequently found Francis guilty. (34) 
We held that the charge erroneously permitted the jury to convict Francis on less than a
unanimous verdict. (35) "The breast-touching and genital-touching were two different offenses,
and therefore, should not have been charged in the disjunctive." (36)

 Our decision in Ngo v. State, (37) which addressed the third category described above,
is also instructive in judging whether the charges here permitted non-unanimous verdicts. 
In a single-count indictment, Ngo was charged with credit card abuse. (38) The three
paragraphs under the single count alleged three separate acts of credit card abuse: that Ngo
stole a credit card; that Ngo received a stolen credit card; and, that Ngo fraudulently
presented a credit card to pay for goods and services. (39) The evidence showed that Ngo
committed each of the credit-abuse offenses in a different way on separate occasions. (40) 
Setting out the three acts in the disjunctive, the charge instructed the jury to convict Ngo of
one offense of credit card abuse if they found that he committed any of the three separate
offenses. (41) 

 On appeal, when Ngo claimed that the charge permitted a non-unanimous verdict, the
State countered that, due to Ngo's failure to request that the State elect as to which offense
it would rely on for a single conviction, it was permissible to submit the separate offenses
in the disjunctive. (42) "Each juror could then decide which of the three acts it thought the State
had proven and return a general verdict so long as all of the jurors agreed that he had
committed the general offense of credit card abuse." (43) 

 We disagreed with the State's argument and held: "When the State charges different
criminal acts, regardless of whether those acts constitute violations of the same or different
statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless
it unanimously agrees on the commission of any one of these criminal acts." (44) This means
that the jury must agree that the defendant "committed the same, single, specific criminal
act." (45) Although the instruction's "boilerplate" section informed the jury that it must be
unanimous, the jury could have understood it to mean that they had to be unanimous about
the offense in general, not a particular incident comprising the offense. (46) 

 There are two other relevant cases--Bates v. State and Crawford v. State. Both cases
address election error only, but because the principles involved in unanimity and election
overlap in some respects, they are helpful in deciding the propriety of the instructions here. 
In Bates, Bates had intercourse with his step-daughter once or twice a week over a period of
two years. (47) The State prosecuted Bates for statutory rape, and the trial judge overruled his
objection to the charge on the basis that it failed to limit what one rape incident that the State
was relying upon. (48) We held that the judge erred: "where more than one act of intercourse
is shown, upon motion of the accused, the state should be required to elect as to which act
it will reply upon for a conviction." (49) 

 Following Bates, in Crawford, we held that the trial judge erred in denying
Crawford's request to have the State elect which act of intercourse it would rely on to convict
Crawford where the child-victim had testified about several distinct instances in which she
had sex with the defendant. (50) We stated that "there was no 'continuing and intervening'
action by [Bates], and these were separate and distinct acts. The State was required to elect
as to which act it wished to convict [Bates] on." (51) 

 Building on this precedent, in O'Neal v. State, we held that, upon the defendant's
request at the close of the State's case, the State is required to elect which incident of
intercourse it will rely on to convict the defendant of one count of sexual assault of a child. (52) 
Recently, we reaffirmed O'Neal in Phillips v. State, holding: Upon a timely request from the
defense--at the close of the State's case--the State is required to elect as to the specific
incident of sexual assault that the State will use to convict. (53)

 After reviewing the applicable case law, we conclude that the court of appeals was
correct in holding that the charges in this case allowed for the possibility that the jury
rendered non-unanimous verdicts. The jury could have relied on separate incidents of
criminal conduct, which constituted different offenses or separate units of prosecution, (54)
committed by Cosio to find him guilty in the three remaining counts upheld by the court of
appeals. (55) Further, as in Ngo, the standard, perfunctory unanimity instruction at the end of
each charge did not rectify the error. The jury may have believed that it had to be unanimous
about the offenses, not the criminal conduct constituting the offenses. 

 The dissent in the court of appeals asserted that charges were specific enough to
permit the jury to reach unanimous verdicts. (56) The dissent points to C.P.'s estimates
regarding when the incidents occurred and that the order of the charges were in correlation
to the evidence. The dissent, however, is incorrect. The evidence failed to differentiate
between the similar, but yet separate, incidents of criminal conduct in relation to the offenses
as charged and the alleged on or about dates. 

 B. Forfeiture and Harm

 Having concluded that the charges were erroneous, how do we proceed? Our
resolution turns on the reconciliation of our election cases with our jury-charge-error
jurisprudence when unanimity is at issue. 

 The State, relying on Justice Garza's dissent, argues that we should not treat Cosio's
claim to include jury charge error, but hold instead that Cosio did not preserve any error for
us to review. We should, as the dissent maintained, look to the substance of the issue. (57) 
Cosio's claim "at its core, complains of the trial court's failure to require the State to elect
the specific criminal acts that it would rely upon for conviction." (58) And while this failure
"did manifest itself in the jury charge," the charge error was secondary to Cosio's failure to
request an election. (59) Any other construction would "overly inflate" Almanza's applicability
and contradict the O'Neal line of cases. (60) 

 This argument has some intuitive appeal. Why should a defendant be permitted to
claim charge error on appeal based on the possibility that the charge allowed for a non-unanimous verdict when, at trial, the defendant failed to request that the State make an
election between incidents that constituted separate offenses? We answered this question,
however, in Ngo--"A request for an election . . . is not a prerequisite for implementing
Texas' constitutional and statutory requirement of jury unanimity." (61) Nevertheless, we will
further explain the reasoning behind our determination here given the view that the law is in
conflict. 

 A defendant's decision to elect is purely strategic and may be waived or forfeited. A
defendant may choose not to elect so that the State is jeopardy-barred from prosecuting on
any of the offenses that were in evidence. (62) Punishment would then also be limited to the
charged offense only, and, given the jeopardy bar, there is no possibility that the defendant
would receive an additional stacked sentence, based on any of the offenses in evidence, down
the line. But at the same time, the defendant would need to consider that the State would be
permitted to proceed under several incidents of criminal conduct, as opposed to just one (or
however many counts the State proceeds on), which may increase the State's chances of
obtaining a conviction. Also, a defendant would not be entitled to a limiting instruction
concerning the jury's consideration of extraneous offenses. 

 In Phillips, we cited four reasons why a defendant may seek an election:

  to protect the defendant from the admission of extraneous offenses;

  "to minimize the risk that the jury might choose to convict, not because one or
more crimes were proved beyond a reasonable doubt, but because all of them
together convinced the jury the defendant was guilty:"


  to ensure a unanimous verdict; and


  "to give the defendant notice of the particular offense that the State intends to
rely upon for prosecution and afford the defendant an opportunity to defend." (63)


 There are additional reasons as well. An election limits a defendant's criminal
liability at that time and forces the State to prove, beyond a reasonable doubt, the single
incident of criminal conduct that it elected to rely upon. A defendant assessing this factor
will undoubtedly analyze the strength of the State's evidence. Though a defendant could still
be prosecuted, at a later date, for the other offenses that the State did not elect to proceed
under, an election may prove to be favorable because the State may be less inclined to pursue
another prosecution in light of the additional resources that the State would have to expend. 
And, if the State did choose to initiate a subsequent prosecution, then a defendant may be in
a better position to reach a plea bargain agreement with the some knowledge of the strength
of the State's case. Finally, a defendant may be able to obtain a limiting instruction as to the
extraneous offenses. 

 A defendant's decision to elect or not elect is a strategic choice made after weighing
the above considerations. And while an election may ensure jury unanimity, guaranteeing
unanimity is ultimately the responsibility of the trial judge because the judge must instruct
the jury on the law applicable to the case. (64) The trial judge is therefore obligated to submit
a charge that does not allow for the possibility of a non-unanimous verdict. This means that
even when the State is not required to elect, the trial judge must craft a charge that ensures
that the jury's verdict will be unanimous based on the specific evidence presented in the case. 
To guarantee unanimity in this context, we have stated that the jury must be instructed that
it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based
on the evidence, that meets all of the essential elements of the single charged offense beyond
a reasonable doubt. (65) Such an instruction should not refer to any specific evidence in the case
and should permit the jury to return a general verdict. For double jeopardy purposes, the trial
judge's charge will not alter the effect on a defendant who chose not to elect. Because it will
be impossible to determine which particular incident of criminal conduct that the jury was
unanimous about, the State will be jeopardy-barred from later prosecuting a defendant for
any of the offenses presented at trial. 

 In the court of appeals, Cosio framed his point of error as follows: "The jury charges
contain egregious error since they allowed for convictions that were not unanimous." Thus,
Cosio's point of error included two legally significant components for purposes of our
analysis--jury charge error and a state constitutional and statutory unanimity violation. We
have held that the constitutional component is subject to the constitutional harm standard
under Texas Rule of Appellate Procedure 44.2(a) when it was properly preserved by a timely
and specific objection at trial. (66) But when the constitutional issue has not been properly
preserved, we turn to our leading case addressing harm when there is charge error. Under
Almanza v. State, charge error is never forfeitable by a defendant's failure to object at trial. (67) 
And a defendant's failure to properly object to charge error controls only the type of harm
analysis that will be applied. (68) In this case, although Cosio forfeited the constitutional
unanimity component of his complaint, his convictions are subject to reversal if the error was
"egregious and created such harm that [his] trial was not fair or impartial. (69) 

 Cosio's general request to have the State elect as to the "counts" did not preserve the
criminal conduct constitutional unanimity component of his allegation for appellate review. (70) 
The request failed to put the State or trial judge on notice that Cosio was demanding that the
State, due to the numerous instances of sexual criminal conduct presented at trial, choose
among the particular incidents that it wanted to rely on to convict Cosio of the four offenses
charged. Nor did Cosio object to the charges at the charge conference on the basis that they
allowed for non-unanimous verdicts. Because Cosio forfeited his constitution-based jury
charge claim, he is not entitled to a harm analysis under Rule 44.2(a). But the charge error
must still be reviewed for egregious harm under Almanza.

 C. Egregious Harm Evaluation

 An egregious harm determination must be based on a finding of actual rather than
theoretical harm. (71) For actual harm to be established, (72) the charge error must have affected
"the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally
affect[ed] a defensive theory." (73) When assessing harm based on the particular facts of the
case, we consider: (1) the charge; (2) "the state of the evidence[,] including contested issues
and the weight of the probative evidence"; (3) the parties' arguments; and (4) all other
relevant information in the record. (74)

 Beginning with the charges, as stated above, they permitted non-unanimous verdicts
based on the evidence presented in the case. Nothing in the charges themselves militates
against this conclusion. 

 Next, we observe that neither of the parties nor the trial judge added to the charge
errors by telling the jury that it did not have to be unanimous about the specific instance of
criminal conduct in rendering its verdicts. (75) This factor therefore does not weigh in favor of
finding egregious harm.

 Finally, C.P.'s testimony detailed each of the four incidents and the various separate
instances of criminal conduct involved in each incident. Her testimony was not impeached. 
Cosio's defense was that he did not commit any of the offenses and that there was reasonable
doubt as to each of the four incidents because the C.P. was not credible and the practical
circumstances surrounding the incidents of criminal conduct did not corroborate C.P.'s
testimony. His defense was essentially of the same character and strength across the board. 
The jury was not persuaded that he did not commit the offenses or that there was any
reasonable doubt. Had the jury believed otherwise, they would have acquitted Cosio on all
counts. On this record, therefore, it is logical to suppose that the jury unanimously agreed
that Cosio committed all of the separate instances of criminal conduct during each of the four
incidents. (76) It is thus highly likely that the jury's verdicts (on the three remaining counts not
set aside on sufficiency grounds) were, in fact, unanimous. Accordingly, actual harm has not
been shown, and we cannot say that Cosio was denied a fair and impartial trial. 

IV. Conclusion

 The court of appeals correctly held that the charges were erroneous for failing to
require unanimous verdicts but erred in concluding that Cosio was egregiously harmed. We
reverse and remand this case to the court of appeals to address Cosio's remaining points of
error as they relate to the three convictions not overturned by the court of appeals for
insufficient evidence. 

 

DATE DELIVERED: September 14, 2011

PUBLISH
1. Cosio v. State, 318 S.W.3d 917, 919, 921 (Tex. App.--Corpus Christi 2010) (en
banc). 
2. Id. at 921.
3. Id.
4. Id. at 923.
5. Id. 
6. Id. at 922-23.
7. Id.
8. Id.
9. Id.
10. Id. at 924-26.
11. Id. at 926.
12. Id.
13. Id. at 926-29 (citing Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App.
1985)).
14. Id. at 929-30 (Garza, J., concurring and dissenting).
15. Id. at 929-33.
16. Id. at 932-33.
17. Landrian v. State, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (referring to
Tex. Const. art. V § 13; Tex. Code Crim. Proc. arts. 36.29(a), 37.02, 37.03, 45.034-45.36).
18. Stuhler v. State, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007).
19. Tex. Penal Code § 1.07(a)(10) (defining conduct as "an act or omission and its
accompanying mental state).
20. Ngo v. State, 175 S.W.3d 738, 747 (Tex. Crim. App. 2005). 
21. Id.
22. See id. at 748 n.33 (discussing Coward v. State, 7 S.W. 332, 332-33 (Tex. Ct.
App. 1888) (the trial judge reversibly erred in failing to identify which cow the State
sought to convict the defendant for stealing when the evidence showed that the defendant
had taken two cows from the complainant)).
23. Id. (relying, in part, on Crawford v. State, 696 S.W.2d 903 (Tex. Crim. App.
1985)).
24. Id.
25. See generally Gonzales v. State, 304 S.W.3d 838, 848 (Tex. Crim. App. 2010)
(discussing units of prosecution for double jeopardy purposes).
26. Ngo, 175 S.W.3d at 747-48.
27. 36 S.W.3d 121 (Tex. Crim. App. 2000) (on reh'g). 
28. Id. at 122.
29. Id.
30. Id.
31. Id.
32. Id. 
33. Id.
34. Id. at 122-23.
35. Id. at 124-25.
36. Id. at 125.
37. 175 S.W.3d at 738. 
38. Id. at 741.
39. Id.
40. Id. at 741-42. 
41. Id. at 742.
42. Id. at 743.
43. Id.
44. Id. at 744.
45. Id. at 745.
46. Id. 
47. 305 S.W.2d 366, 367-68 (Tex. Crim. App. 1957).
48. Id. at 368.
49. Id. 
50. 696 S.W.2d at 904-07. 
51. Id. at 907.
52. 746 S.W.2d 769, 771-72 (Tex. Crim. App. 1988).
53. Phillips v. State, 193 S.W.3d 904, 913 (Tex. Crim. App. 2006). 
54. See generally Gonzales, 304 S.W.3d at 848.
55. Phillips, 193 S.W.3d at 913. 
56. Cosio, 318 S.W.3d at 930 (Garza, J., concurring and dissenting).
57. Id. at 931-32.
58. Id. at 932.
59. Id.
60. Id.
61. 175 S.W.3d at 748; see also Warner v. State, 245 S.W.3d 458, 465 (Tex. Crim.
App. 2008) ("the source of charge error has little relevance to the harmfulness of the
error.").
62. Ex parte Pruitt, 233 S.W.3d 338, 346 (Tex. Crim. App. 2007); Dixon v. State,
201 S.W.3d 731, 735 (Tex. Crim. App. 2006).
63. 193 S.W.3d at 609-10.
64. See Posey v. State, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998) (Texas Code of
Criminal Procedure "Article 36.14 also mandates that a trial court submit a charge setting
forth the law 'applicable to the case.'").
65. Ngo, 175 S.W.3d at 748; Pizzo v. State, 235 S.W.3d 711, 714-15 (Tex. Crim.
App. 2007). 
66. Phillips, 193 S.W.3d at 914, reaffirmed in Dixon, 201 S.W.3d at 734.
67. Id. 
68. Ngo, 175 S.W.3d at 743.
69. Phillips, 193 S.W.3d at 914.
70. See Martinez v. State, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007) (each of an
indictment's counts contain a single offense while a count's paragraphs allege different
methods of committing the same offense). 
71. Ngo, 175 S.W.3d at 750.
72. See Warner, 245 S.W.3d at 462, 464 (neither party bears the burden in showing
harm or egregious harm).
73. Almanza, 686 S.W.2d at 171.
74. Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).
75. Compare with Ngo, 175 S.W.3d at 750-52 (omission of unanimity instruction
caused egregious harm when prosecutor and judge both misstated law concerning
unanimity on multiple occasions during trial).
76. See e.g., Taylor v. State, 332 S.W.3d 483, 493 (Tex. Crim. App. 2011) ("The
defensive theory was that no sexual abuse occurred at any time. It is unlikely that the jury
believed that Appellant sexually assaulted the victim before he turned 17 years old but not
after. In this case, the jury either believed Appellant or believed the victim.").